HERDLER, *Appellant*, v. BUCK'S STOVE AND RANGE COMPANY.

Division Two, November 20, 1896.

1. **Practice:** NEW TRIAL: EVIDENCE, EXCEPTIONS TO. The action of the trial court in setting aside a verdict and awarding a new trial on the ground of the admission of improper evidence is erroneous where no exceptions were saved by the losing party to the admission of any evidence on the trial.

2. ———: ———. The fact that during the trial defendant's counsel and the court became involved in a spirited controversy in which, however, nothing improper or prejudicial to defendant's rights was said by the court, and in which neither plaintiff nor his counsel took part, can not afford ground for setting aside a verdict returned for plaintiff.

3. **Master and Servant:** SUITABLE PLACE AND APPLIANCE FOR WORK: MASTER'S DUTY. It is the duty of the master to furnish his servant a reasonably safe place within which to work and to see that the appliances he is to use are in a reasonably safe condition.

4. ———: ———: ———: LATENT DEFECTS. A servant does not assume those risks which result from latent defects in machinery or appliances which are unknown to him but which are known to the master, or which by the exercise of ordinary care on the part of the master could be known to him.

5. ———: ———: ———. The duty of seeing that the place and appliances are such that the servant can perform his duties with reasonable safety is a personal one which the master can not delegate to an independent contractor or other person and thereby escape liability on his part.

6. ———: ———. The fact that the servant's work is done in the presence of, and under the immediate direction of, the master's foreman, is equivalent to an assurance that the servant may safely proceed with it; he is not bound in such case to search for danger, but may rely for his safety on the judgment and conduct of the foreman. (*Sullivan v. Railroad,* 107 Mo. 66, followed.)

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

REVERSED AND REMANDED.

*A. R. Taylor* for appellant.

(1) This court upon this appeal will only consider the correctness of the grounds specified by the trial judge in sustaining the motion for a new trial. If they are unsound, the court will reverse and direct the trial court to enter up judgment on the verdict. *Millar v. Madison Car Co.,* 31 S. W. Rep. 575; *Candee v. Railroad,* 31 S. W. Rep. 1032. (2) There was no improper admission of testimony offered by the plaintiff. (3) The remarks made by counsel for defendant and by the judge in the presence of the jury afforded no ground for a new trial. (4) There was no error in the rulings on the instructions.

*C. P. & J. D. Johnson* for respondent.

(1) The trial court properly sustained the motion for a new trial, for the error committed in refusing to

give defendant's instruction directing the jury to find for it under the pleadings and the evidence. *First.* Because the injury to plaintiff resulted from the acts of an independent contractor, for which defendant was in no wise responsible. *Morgan v. Bowman*, 22 Mo. 538; *Hilsdorf v. City*, 45 Mo. 98; 14 Am. and Eng. Ency. of Law, 830. *Second.* Because the fall of the column which occasioned the injury to plaintiff was one of the risks incident to plaintiff's employment. *Jackson v. Railroad*, 104 Mo. 448; *Bohn v. Railroad*, 106 Mo. 429; *Alcorn v. Railroad*, 108 Mo. 81; *Thomas v. Railroad*, 109 Mo. 187; *Williams v. Railroad*, 119 Mo. 316; *Fugler v. Bothe*, 117 Mo. 475; 14 Am. and Eng. Ency. of Law, 842. *Third.* The defense that plaintiff assumed the risks of the employment, or of contributory negligence, is properly raised by the pleadings and the evidence. *Reichla v. Gruensfelder*, 52 Mo. App. 58; *Schlereth v. Railroad*, 96 Mo. 509; *Hudson v. Railroad*, 101 Mo. 13. (2) The trial court's action in granting the new trial was likewise justified by its refusal to give, in the form offered by defendant, the instruction which the court afterward gave in an altered shape. See cases cited in first paragraph of point 1, *supra.* (3) Another valid reason for sustaining the motion for new trial was, that the court below erred in telling the jury in the modification made of the last mentioned instruction, that Inanen was, in fact, defendant's foreman or vice-principal. *Wilkerson v. Eilers*, 114 Mo. 245; *Harrison v. White*, 56 Mo. App. 175; *Dulaney v. St. Louis, etc.*, 42 Mo. App. 659; *Merriweather v. Kansas, etc.*, 45 Mo. App. 528. (4) The trial court erred in the controversy with defendant's counsel during the trial, and defendant was prejudiced thereby with the jury. The court exercised a wise discretion in granting a new trial on that ground, and its ruling in that behalf should not be

interfered with. *McCullough v. Ins. Co.*, 113 Mo. 606, and cases cited at 619.

GANTT, P. J.—This is an action brought by the plaintiff against the defendant to recover damages for personal injuries received on the twenty-sixth day of January, 1893, by the fall of an iron column, against which plaintiff had placed a ladder, and on which he was standing under the direction of one of defendant's superintendents who had charge of and controlled plaintiff in the work he was doing for defendant.

Plaintiff had been employed on the day preceding his employment by defendant's foreman Inanen to work as a carpenter in the erection of a building which defendant was constructing at 3500 North Second street, St. Louis. The Union Iron and Foundry Company had been employed by defendant as an independent and separate contractor to put up the ironwork of its building, included in which were certain upright iron posts or pillars on which a part of the woodwork was to rest for support. The particular work at which plaintiff was engaged when hurt was the adjusting of the wooden beams upon the top of these upright iron posts, which had already been placed in position by the foundry company. These iron pillars or posts had been stationed at the proper distances and stood upright upon their bases and were held in place by braces attached and fastened by the iron workers. These braces consisted of two planks about sixteen feet long, spliced together so as to make a length of about twenty-eight feet and were fastened to a collar or wooden box around the iron columns near the top of the column and extended to within twelve or fourteen feet from the base or foot of the posts, being fastened at that end to a stub or stake driven in the ground about three inches deep. The planks used

in making the braces were an inch thick, six inches wide, and sixteen feet long,—spliced as already stated. The stake was about two inches thick by four inches wide and the long brace was nailed to the stub or stake by a nail or two,—ten or twelve penny wire nails. The plaintiff had not seen these posts erected and had worked in the building only the preceding half day before he was hurt on the morning of January 26, 1893.

The attention of the foreman had been called by the carpenters, notably by August Lauth, prior to plaintiff's injury, to the fact that these posts were insecurely braced. Lauth testified: "I saw some columns raising and I went to Ignon [Inanen] and told him the braces were too weak to hold these columns and that an accident would happen and he answered me 'I will see about it.'" Other carpenters testified similarly.

The evidence tended to prove that Ignon or Inanen, the foreman in charge of the work, directed Herdler, the plaintiff, to go up on a ladder placed against one of these iron posts and bring the girder to its place on top of the post. Obeying this order he placed the ladder against the post and had ascended it and reached out for the wooden beam when the column gave way and fell and in the fall plaintiff's right ankle was crushed, the bones being broken.

On cross-examination he stated he had never done such work before. "They had a derrick there to raise the beams. They would raise one end on a column and then swing the other round to rest upon another column." He had gone up the ladder resting against these columns four times the first day he worked. He fell on the first one he ascended on the morning he was hurt. He had never worked on a building in which they put up such columns as these. He did not see

the foundrymen putting up the posts. He did not notice how the columns were braced before going up the ladder.

There was a verdict for plaintiff for $3,500 in the circuit court, which, upon motion, the court set aside on grounds specified on its record, to wit: *First*. The admission of improper evidence. *Second*. Remarks of counsel for defendant and by the judge of the court in the presence of the jury. *Third*. Giving and refusing to give instructions.

From the judgment awarding defendant a new trial plaintiff has appealed.

Numerous grounds for a new trial were assigned in the motion therefor but the court granted the new trial for the three reasons above set forth which were spread on its record as required by the statute.

I.   Following the adjudication of this court in *Millar v. Madison Car Company*, 130 Mo. 517, *Candee v. Railroad*, 130 Mo. 142, and *Bradley v. Reppell*, 133 Mo. 545, our attention will be directed in the first instance to an examination of the action of the circuit court in sustaining the motion on the grounds specified on the record, as the effect of its order in so doing was to overrule the motion as to the other grounds therein set out.

It will be observed that no mention is made of any specific evidence which the court deemed improperly admitted nor has the defendant pointed out any such in its motion for new trial or its brief or a counter abstract in this court. A careful examination of the transcript discloses that not a single exception was saved to the action of the court in admitting testimony. In the absence of any exception saved to the admission of evidence by the losing party and a total failure to specify the particular evidence which the court considered incompetent and hence improvidently

admitted we must hold that the ruling of the court can not be sustained in setting aside the verdict on this ground. To sustain its ruling in so doing would be to defy the statute and leave the party obtaining a verdict wholly at sea upon a second trial of the cause. It was to obviate such a practice that the statute was enacted. It is simply justice that a party should be advised of the grounds upon which he is deprived of his verdict by the court.

II. The second ground upon which the verdict was set aside is: "Remarks made by counsel for defendant and by the judge of the court in the presence of the jury."

We append the full record of the occurrence upon which this ruling is predicated.

The only remarks made by the court to which this ruling could apply, occurred during the cross-examination of Dr. Rothstein, the second witness offered by the plaintiff.

"Mr. Johnson, counsel for defendant, asked Dr. Rothstein:

"*Q.* Isn't it a fact, that a fracture, fractured bone, is often stronger after a fracture than it was before or equally as strong? *A.* Well—

"(Mr. Johnson, interrupting)—*Q.* Answer it yes or no. I want a categorical answer.

"*The Court:* You will address yourself to the court, and not to the witness, Mr. Johnson, when you take exceptions to his answer. Ask the court to give the witness directions.

"*Mr. Johnson:* I object to your Honor's lecturing me. I know my duties as well as the court does. This is cross-examination.

"*The Court:* Take your seat now. The court will conduct the proceedings in this room in this case.

"*Mr. Johnson:* With all due respect, your Honor can not perform my duties. I am an officer of this court, and know my duties. I know what my duties are.

"*The Court:* Take your seat, Mr. Johnson.

"*Mr. Johnson:* For the present I prefer to stand.

"*The Court:* The court directs you to take your seat.

"*Mr. Johnson:* I am not in contempt, sir; I have a right to stand or sit at the counsel table under the rules, and I prefer to stand—with all due respect to your Honor. I am an officer of this court as well as your Honor is. I ask for an answer to that question.

"*The Court:* The witness will give you no answer until you are seated.

"*Mr. Johnson:* The rules of the court permit counsel to sit or stand at the counsel table; I ask, sir, with all due respect to the court.

"*The Court:* You will take your seat, and the court will not proceed until you have been seated, and this matter is disposed of between you and the court.

"*Mr. Johnson:* Well, sir, I am in a proper position, if the court please. I don't see that the court has any right to order me in my action, whether to stand up or sit down. I am not in contempt, nor am I defying your Honor. I know my rights. There is no occasion for this controversy. Now I ask your Honor to permit the witness to answer the question.

"*The Court:* The court will not proceed until you obey the directions of the court, so that we may proceed in an orderly way.

"*Mr. Johnson:* I have no further questions to ask the witness. Read the question, please, Mr. Weller.

"*The Court:* No, Mr. Weller [the stenographer] will not read the question.

"*Mr. Johnson:*    I have no further questions to ask, I am through with the witness.

"*Mr. Taylor:*    Doctor, there is one question—

"*Mr. Johnson:*    I except to the ruling of your Honor.

"(Last question read, the one asked by Mr. Johnson.)

"*The Court:*    Answer the question.

"*Mr. Johnson:*    I don't ask for an answer, sir.

"*Witness:*    In the bones we have fractures, where the end of the bone generally is it is stronger than the joint—

"*Mr. Johnson:*    I object to that, if that is responsive to my question.

"*The Court:*    Proceed with your answer, Doctor.

"*Witness:*    In the joint bones we rarely—never I think—it is not recorded that any bones in the joint will get stronger. It is always weaker, but in some bones we find sometimes that by calculus it has formed a stronger bone in the limb than it was before.

"*Mr. Johnson:*    I desire to save my exception to the ruling of the court.

"*Mr. Taylor:*    Q. What is the definition of the term 'crepitation?'    A. The bones, if they are broken, we make an examination of the parts by examining and rubbing together, and it causes a rough feeling under the touch, and at the same time even to the ear. You can hear it and feel it."

This closes the statements of the "remarks of counsel for the defense and judge in the presence of the jury," the second ground specified for the new trial.

In a word, the learned counsel for defendant had without any excuse interrupted the witness in the midst of his answer to his question, and the judge had very properly and politely admonished counsel that if

he objected to the way in which the witness was answering, the proper way was to call upon the court to direct the witness. Certainly in this the court was right. It was his duty to prevent an unseemly wrangle between the counsel and the witness, and there was nothing harsh or oppressive in his suggestion and the learned counsel should have gladly acquiesced in the suggestion; but instead of so doing he became aggressive and contumacious, and knowing the distinguished counsel as we do and how unlike his usual demeanor his conduct was on this occasion, we are surprised that he permitted himself to become so irritated over so small a matter and to defy the authority of the court as he did. We can discover nothing in the previous answers of the witness that indicates any desire to avoid candid and responsive answers. Certainly his conduct did not justify an attempt to browbeat him and the court's suggestion was most timely and appropriate. This episode did not enhance the respect of the jury and bystanders for the court, but it was certainly not imputable to the judge.

The judge declined to permit the witness to answer so long as Mr. Johnson refused to obey the directions of the court. To this Mr. Johnson excepted. Neither plaintiff nor his counsel took any part in this passage between the counsel and the court, and yet the counsel who precipitated the disturbance and was actively engaged in it moved the circuit court to set aside plaintiff's verdict because of its occurrence. To allow the rights of the plaintiff to be disregarded and his verdict overthrown by the misconduct of his adversary's attorney would be palpably unjust. This is admitted by the learned counsel himself. In his brief he says "It is sufficient to say that we concede that remarks made by defendant's counsel could not properly affect the verdict," "but it is otherwise with the court." As

Herdler v. Buck's Stove & Range Co.

we have already said, there was nothing said by the court to prejudice defendant's case. It simply required counsel to treat the witness respectfully. It does seem to us that the learned judge in setting aside the verdict on this ground was governed more by a sense of delicacy than of robust justice, and we think it erred against the substantial rights of plaintiff in so doing.

III. The third and remaining ground upon which the new trial was awarded was the giving and refusal of instructions. Two instructions only were asked by defendant. One was a demurrer to the evidence. The other was as follows:

"The jury are instructed that if they believe and find from the evidence that the column which fell with plaintiff as mentioned in the petition was placed in position and braced by the Union Iron and Foundry Company and not by the defendant, and that the defendant and its foreman Inanen had no knowledge of any insufficiency or defect of the bracing of said column, then the jurors should find a verdict for the defendant, even though they may further find from the evidence that said column fell by reason of the defective bracing thereof."

The court overruled the demurrer to the evidence and modified the other instruction, above quoted, by adding after the words "had no knowledge of any insufficiency or defect of the bracing of said column" these words *"and would not have known the same by the exercise of ordinary care,"* and gave it as thus amended.

For the plaintiff the court gave two instructions, one as to the measure of damages, against which no criticism can be made, and the other in these words:

"If the jury believe from the evidence in this case that on the twenty-sixth day of January, 1893, the plaintiff was in the service of the defendant as a journeyman carpenter at defendant's building then being

erected at 3500 North Second street, St. Louis, and if the jury believe from the evidence that defendant at said time had employed Anthony Inanen as its foreman and did authorize him to command, direct, and control the journeyman carpenters, including the plaintiff, as to the work they should do under their employment and the manner of doing the same and to provide means and appliances for doing said work, and if the jury find from the evidence that on said day said Inanen, foreman as aforesaid, commanded the plaintiff to ascend a ladder resting against an upright iron post and to aid in adjusting a girder or beam thereon, and if the jury believe from the evidence that whilst plaintiff was on said ladder in obedience to said order of said foreman, engaged in the duty of adjusting said girder, said iron post gave way and fell, and that thereby the plaintiff was caused to fall to the ground, and that plaintiff's leg was crushed and broken at the ankle thereby, and if the jury find from the evidence that said post at said time was not braced or secured so as to be reasonably safe for the plaintiff to do said work, and that by reason of the failure to brace or secure said post so as to be reasonably secure for the plaintiff to do said work thereon it fell and so injured plaintiff, and if the jury further find that said Inanen had been notified of the insecure manner in which said post was braced and knew or by the exercise of ordinary care would have known that said post was not so braced as to be reasonably safe for plaintiff to do said work and ordered plaintiff to do said work, and if the jury further find from the evidence that said Inanen did not exercise ordinary care in so ordering plaintiff to do said work under the circumstances, and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of his injury, then the plaintiff is entitled to recover provided you further find

from the evidence plaintiff did not know and by the exercise of ordinary care would not have known that said post was not so braced and secured as not to be reasonably safe for him to do said work."

There was ample evidence to sustain every hypothesis upon which this instruction was predicated.

Did it as a whole announce correct principles of law? If it did, it follows inevitably that no error was committed in overruling the demurrer to the evidence or in modifying defendant's other instruction.

This instruction simply advised the jury that if plaintiff was employed by defendant's foreman as a carpenter to work on a building then in the course of construction, and was placed under the orders, supervision and control of said foreman and was by him directed to ascend a ladder resting against an iron post standing erect, and that said foreman knew or by the exercise of ordinary care would have known it was unsafe and insecurely braced and because it was insecurely braced it fell with plaintiff and crushed his foot and that plaintiff neither knew nor by the exercise of ordinary care could have known it was unsafely braced, then plaintiff could recover.

"It is the master's duty to be careful that his servant is not induced to work under a notion that tackle or machinery is staunch and secure when in fact the master knows, or *ought to know*, that it is not so. And if from any negligence in this respect damage arise, the master is responsible." Lord CRANWORTH in *Paterson v. Wallace,* 1 Macq. Scotch App. 751.

This statement of the law by the lord chancellor is now the recognized law of this state. It is the plain duty of the master to furnish his servant a reasonably safe place in which to work and to see that the appliances with which he is to work are in a reasonably safe condition. And while it is a general principle that

one capable of selecting his employment and contracting for himself is held to assume the risks ordinarily incident to such employment, he does not assume those risks which result from latent defects in machinery or appliances which are unknown to him but which are known to the master or which by the exercise of ordinary care by the master should be known to him.

The duty of seeing that the place and appliances are such that the servant can perform his duties with reasonable safety is a personal one which the master can not delegate to someone else, and thus escape liability. It is a duty of which the law will not permit him to divest himself. He can not escape his liability by the employment of others to superintend the work nor by the employment of independent contractors. The duty is his own and he is liable for the safety of the place in which he requires the work to be done, and the appliances with which he requires it shall be done whether furnished by himself or others. As was said in *Burnes v. Railroad*, 129 Mo. *loc. cit.* 56, "while for many purposes this relation of independent contractor will be recognized, it can not be sustained to shield the master from those positive personal obligations cast upon him by his relation to his servant."

Recurring then to the facts of this case, the plaintiff was a carpenter. He had never worked on a building supported by iron columns. These columns were already in place when he was employed. He had nothing to do with placing them in position and was not charged with bracing them. He was sent to work upon them at once and worked on four different posts the first afternoon. It is conceded that he was injured by the fall of the first post upon which he was sent to work next morning. The superintendent was present personally directing him to go upon the post and connect the girder. It is in evidence and uncon-

tradicted that this foreman of defendant was warned by other carpenters that these bracings were insecure. He knew that plaintiff was taking a risk in going upon the ladder and his knowledge was the knowledge of his master, the defendant. The plaintiff did not know of the insecure bracings.

In the language of Judge SHERWOOD in *Sullivan v. Railroad*, 107 Mo. *loc. cit.* 78, "the fact that Prather [Inanen] was present and ordered and superintended the removal of the last section of the roof when the accident occurred was tantamount to a tacit assertion that it was safe for plaintiff to proceed * * * and plaintiff was not bound to search for danger, *but had a right to rely upon the judgment and discretion of the defendant's foreman that he would fully perform the measure of his duty towards him.*" These remarks aptly fit this case.

Plaintiff did not assume the risk of the negligent bracing of these beams. Defendant was bound to inspect and see that these posts were properly secured before ordering carpenters to go upon them. The most ordinary care could have made them entirely safe, and after being notified of the insecure fastening it was little less than criminal negligence to send plaintiff to work upon them.

The court submitted to the jury whether plaintiff in obeying these orders was guilty of contributory negligence, and they have returned he was not. This case was well tried. There was no error either in the admission of evidence or in the instructions.

If the judgment setting aside the verdict is to be affirmed it subjects plaintiff to the cost and expense of another trial. We do not see how the court could ever try it with less error. The verdict was manifestly for the right party, and should not, in our opinion,

have·been set aside, and for the error in so doing, the judgment setting it aside is reversed and the cause remanded with directions to enter judgment for plaintiff on the verdict, with interest from its rendition. SHERWOOD and BURGESS, JJ., concur.