Kelly v. Stewart.

EUGENE KELLY, Respondent, v. JAMES STEWART et al., Appellants.

**St. Louis Court of Appeals, March 1, 1902.**

1. **Witness: IMPEACHMENT OF: EVIDENCE.** The controverted declaration of a witness can not be used for the purpose of impeachment until the witness has been examined upon the subject and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or exculpation, if he desires to make it.

2. **Negligence: INSTRUCTION.** Where a petition counts on the failure of defendant to properly secure the stones in the wall of a building and it is admitted that some appliance should have been used therefor, an instruction properly declared the law to the jury which stated that if plaintiff's injury was caused by defendant's failure to provide proper appliance and plaintiff was without contributory negligence on his part, the verdict should be for plaintiff.

3. **Instruction: SHOULD BE DEFINITE AND NOT A REPETITION.** An instruction should not be given when it is indefinite and covers no phase of the case being tried, or if it is an indefinite repetition of another instruction already given.

4. **————: SHOULD BE BASED ON EVIDENCE.** Where an instruction had no evidence to support it, it should not be given.

5. **Contributory Negligence: EVIDENCE: INSTRUCTION.** Where there is no evidence of contributory negligence, the element of contributory negligence should be eliminated from the instructions.

6. **Measure of Damages: INSTRUCTION.** In instruction of the measure of damages is not erroneous which, after telling the jury to take into consideration all the elements of plaintiff's damages, in-

cluding what he will sustain in the future as the direct result of the injury received by him, further tells the jury to "consider all the facts and the circumstances in evidence."

7. **Instruction: NEGLIGENCE: BURDEN OF PROOF.** In the case at bar, it was error to refuse the following instruction: "The court instructs the jury that the fact that plaintiff was injured is, in itself, no evidence of any negligence on the part of the defendants, but, on the contrary, the plaintiff must, by his evidence, show that the defendants were guilty of negligence. And the burden of proof is upon plaintiff to establish such negligence by the greater weight of evidence.

8. **Master: NOT INSURER OF SERVANT.** A master does not insure the safety of his servants, and in the case at bar, the jury should have been so instructed.

9. **Fellow-Servants: WHO ARE.** A common laborer is not a fellow-servant of the superintendent or of a foreman under whose directions he worked.

10. **Definition of "Wanton".** Where a petition counts on negligence it does not negative an allegation of negligence by using the word "wanton," as the word "wanton" does not signify willful, but recklessness or heedless inattention to duty.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

REVERSED AND REMANDED.

*Wise & McNulty* and *Robt. A. Holland, Jr.,* for appellants.

(1) There was no evidence whatever of any negligence on the part of the defendants. The law is well settled that where a master is engaged in erecting a structure of any kind the law does not impose upon him the duty of keeping the structure in a safe condition at every moment of the work, so far as its safety depends upon the due performance of that work by his employees. The sole duty of the master is to furnish suitable appliances, and if a servant is injured as a result

of the improper use of such appliances by a fellow-servant, he can not recover. Bowen v. Railroad, 95 Mo. 268; Kelly v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485. (2) The court erred in giving instruction C at the request of plaintiff. Said instruction is as follows: "C. If you believe from the evidence that the stone or stones which fell on plaintiff and injured him fell because of the negligent manner in which they were handled and laid by defendants, your verdict must be for plaintiff, unless you further believe from the evidence that plaintiff was guilty of contributory negligence. And unless you further believe that such negligence was in handling and laying the stone by a fellow-servant as defined in these instructions." It is too general, and, like instruction B allows the jury too wide a field for their deliberations. Goodwin v. Chicago, 75 Mo. 73; Yarnall v. Railway, 75 Mo. 575; Zimmermann v. Railroad, 71 Mo. 476. There is no evidence that defendants were guilty of any negligence in handling the stone. The evidence is that the stones were handled solely by co-workers of plaintiff and not by defendants, hence, it was error to give an instruction embodying a theory not based upon any facts in the evidence. McAfee v. Valandingham, 75 Mo. App. 45; Haddock v. Somes, 102 Mo. 126; Sparks v. Brown, 46 Mo. App. 529. (3) The law is well settled that it is incumbent upon plaintiff to prove his case by the greater weight of the evidence. These instructions were clearly correct and should have been given by the court. No instruction was given covering this point. Krampe v. Brewery Assn., 59 Mo. App. 277; Callahan v. Warne, 40 Mo. 131; Witting v. Railroad, 101 Mo. 631; O'Malley v. Railroad, 113 Mo. 319.

*Lee Meriwether* for respondent.

(1) "Where the master gives one in his service power to superintend, control and direct the men engaged in the per-

Vol 93, app—4.

formance of work, such person, as to the men under him, is a
vice-principal and it is immaterial by what name he may be
designated." Miller v. Railroad, 109 Mo. 350. In the case
at bar, appellants gave to James Carey "power to superintend,
control and direct" the riggers. To Carey, as foreman of the
riggers, was delegated the authority to locate the lookout;
Carey ordered the lookout put where it was at the time re-
spondent was injured; witnesses testified that the use of a look-
out, especially in such a position as that in this case, was un-
safe, and caused the stones to fall upon respondent. Thus
respondent's injuries are shown to have resulted from the use
of an improper appliance and from the negligent manner in
which the stones were laid and handled. And this is precisely
one of the allegations made in respondent's petition. The
allegation being properly made and testimony adduced to sup-
port the same, it was clearly within the jury's province to say
whether that testimony was sufficient. Moore v. Railroad,
85 Mo. 588; Dayharsh v. Railroad, 103 Mo. 575; McDermott
v. Railroad, 85 Mo. 285; Relyea v. Railroad, 112 Mo. 86;
Jones v. Railroad, etc., 43 Mo. App. 399.

BLAND, P. J.—Appellants were contractors for the
erection of a modern building of iron, stone and brickwork on
Washington avenue in the city of St. Louis known as the
Brown building. Respondent was employed by appellants as
a common laborer. His duties were to unload stones as they
were brought on wagons to the building and to help place
them in position to be raised to place in the wall. His place
of work was on the ground. On June 13, 1898, what is
known as the dental course had been laid on the third story of
the building and the workmen were proceeding to lay the
molding course on the dental course. The dental stones
rested from six to eight inches on the wall and projected about
ten inches, the projecting part being curved upward. The
molding layer rested about twelve inches on the wall and pro-

jected from seventeen to eighteen inches. The stones were raised from the ground by means of a lookout—a piece of timber about twenty-five feet long, ten by twelve inches with one end strapped to the iron framework on the fifth floor and projected from four to eight feet beyond the wall. A block and line was suspended from the lookout and hung about two feet beyond the building line and was operated by a steam engine and nigger-head. A molding stone about six feet long, three feet deep and eight inches thick was raised by means of the lookout and block and tackle to the third story and laid on the dental course and then lifted up for the purpose of replacing it. When it was raised, a part of the dental course fell outward upon the sidewalk and on respondent and crushed and cut off one of his legs above the ankle. At the time respondent was caught by the falling stone he was trying to get a roller from under another stone resting on the sidewalk for the purpose of placing the stone in position to be raised and was bending over and was looking toward the ground and received no warning of the falling stones until he was struck and injured. He was conveyed to the city hospital where he underwent two amputations of the leg and was afterwards confined for a long period of time in St. Mary's hospital at an expense of five dollars a week.

The respondent's evidence tends to prove that the ordinary and safe course to pursue in putting up such a dental course as appellants had placed on the building, was to either anchor the dental course to the "I" beams of the frame work or to prop them from the outside before putting on the molding course; that neither was done by the appellants; that without props or anchorage it was dangerous to put on the molding course, as the center of gravity of the molding stones was outside of the building line or outer edge of the wall. His evidence also tends to prove that the lookout was about eight feet west of the place where the stone was to be set and that when the stone was lifted off of the wall for the purpose

Kelly v. Stewart.

of resetting it, the motion of the stone would be upward and westward and the tendency would be to drag the wall and weaken it; that to properly and safely use the lookout it should have been directly over the point where the stone was to be laid and that it was negligence to have the lookout eight feet from a perpendicular with the place of resting the stone.

On the part of appellants the evidence tends to prove that all of the dental course was secured by iron anchors fastened in the stones to the "I" beams; that the dental course had been set in cement more than twenty-four hours before any of the molding course was put on, and that it was sufficiently strong and secure to have received the molding course; that the accident occurred through the negligence of the man in charge of the nigger-head in failing to properly raise the stone after it had been first placed on the wall; that the nigger-head could have been so controlled as to have raised the stone steadily and easily and that by the use of the guy ropes it could have been raised perpendicularly without any dragging movement on the wall, and that it was the fault of this man that the stone was raised by a quick jerk and dragged the wall so that there was a separation of the stone-work from the brickwork that backed up the wall; that the man in charge of the nigger-head was a co-employee of the respondent. That in a moment, and before the extent of the injury to the wall could be ascertained, the stone fell outward and upon the respondent.

Appellant's evidence also tends to prove that a lookout, such as the one in use and fastened as it was fastened to the iron framework, was the usual appliance for hoisting stones on the walls of buildings like the one they were erecting and that it was a safe appliance; that the stone being raised was held by a "lewis" to which were attached guy ropes for the purpose of swinging the stone after it was raised to its place. That the lookout was not over four feet from a perpendicular to where the stone was to be set and that it was perfectly safe

to hoist a stone, of the dimensions of the one in question, in the position the lookout was in.

James Casey testified that he was employed at the time of the accident by the appellants as foreman of the laborers on the building and that he had charge of the riggers—the hoisting apparatus.

At the request of respondent the court gave the following instructions:

"B.   If you believe from the evidence that the stone or stones which fell and injured the plaintiff, fell because of defendant's failure to provide proper appliances for retaining, securing and fastening said stone or stones, or to properly back same with brick, and without contributory negligence on plaintiff's part, your verdict must be for plaintiff.

"C.   If you believe from the evidence that the stone or stones which fell on plaintiff and injured him fell because of the negligent manner in which they were handled and laid by defendants, your verdict must be for plaintiff, unless you further believe from the evidence that plaintiff was guilty of contributory negligence.   And unless you further believe that such negligence was in handling and laying the stone by a fellow-servant as defined in these instructions."

And the following at the request of appellants:

"D.   The court instructs the jury that the fact that plaintiff was injured is, in itself, no evidence of any negligence on the part of the defendants, but on the contrary, the plaintiff must, by his evidence, show that the defendants were guilty of negligence.

"E.   The care which defendants were required to exercise toward plaintiff as their employee was ordinary care, and by ordinary care is meant such care as is reasonably to be expected of ordinarily prudent persons under the same or similar circumstances as those shown by the evidence in this case.   And you are instructed in this case that if you believe from the evidence that defendants in the construction of their

building did use ordinary care, that is, such care as would be used by ordinarily prudent persons under similar circumstances then the defendants were not negligent, and if you believe from the evidence they were not negligent, the plaintiff can not recover.

"F.   The court instructs the jury that the plaintiff can not recover in this case if you believe from the evidence his injuries were the result of a mere accident, that is, that they were due to causes which could not be anticipated by the defendants in the exercise of such care as might be reasonably expected of persons of ordinary prudence under the same or similar circumstances.

"G.   If you believe from the evidence in this case that plaintiff was injured through the negligence of a person in charge of the 'nigger-head' attached to the engine, in holding on to the rope and making it tight instead of loosening it, as he should have done, and that said person was engaged with plaintiff in the same gang in the prosecution of the same work, then the person at the 'nigger-head' and the plaintiff were fellow-servants; and if the plaintiff was injured through the negligence of the person at the 'nigger-head' he can not recover in this case.

"H.   The court instructs the jury that the plaintiff and the men working with him in bringing stone to the building and in hoisting it to the men engaged in laying it in place in the wall were fellow-servants.   And if the plaintiff was directly injured through the negligence of his fellow-servants, he can not recover in this case.

"I.   You are instructed that there is no evidence, and there can be none in this case, showing or tending to show that John L. Stewart (defendant), superintendent, caused to be given an order to the engineer to hoist with the engine or to the man who held the rope at the nigger-head for him to hold said rope, as there is no averment in plaintiff's petition

to this effect, and the question as to what order, if any, John L. Stewart gave is not involved in this case."

And on its motion the following:

"U. If the jury believe from the evidence that the lookout mentioned in evidence, and used by defendant for hoisting stone, was not such an appliance as builders of ordinary prudence would use under similar conditions; or if you find from the evidence that the defendants did not exercise such ordinary prudence in locating said lookout with reference to the point where stone in question was to be set; and if you further find that by reason of the want of such ordinary prudence or care on the part of defendants in using a lookout or in its location, the stone which was being set was dragged across and out from the wall loosening same so that it fell and injured plaintiff, then the negligence of defendants will have been established, and you should find for the plaintiff.

"If on the other hand, you believe and find from the evidence that the said lookout, as located, was a proper and reasonably safe appliance for hoisting the stone in question, and such as builders of ordinary prudence would use under similar conditions, then defendants were not guilty of negligence in using the lookout so located.

"K. The opinions of the experts are to be considered by you in connection with all the evidence in this case, but you are not bound to act upon them to the exclusion of other testimony. Taking into consideration these opinions, and giving them just weight, you are to determine the facts for yourselves from the whole evidence.

"L. If you find for the plaintiff you should, in fixing the amount of his damages, take into consideration his age and condition in life, the injury sustained by him, the physical and mental pains suffered, if any, his loss of time, if any, the expense, if any is proved, incurred by him for board and nursing at St. Mary's Infirmary, such damages, including loss of earning capacity, if any, as you believe from the evidence

he will sustain in future as the direct result of the injuries received, together with all the facts and circumstances in evidence and assess his damages at such sum as from the evidence you may deem proper, not exceeding ten thousand dollars."

The jury returned a verdict for four thousand dollars for respondent. After an unsuccessful motion for a new trial defendants appealed.

I. A. L. Stewart, defendants' superintendent, as a witness testified that Bruce, the employee who set the stone, called his attention to an opening between the brickwork and the stonework after the stone had been jerked up, and stated that he told Bruce not to do anything until he could go down and see how it looked from below; that before he reached the front of the building the stones fell.

Respondent in rebuttal called Patrick Conley as a witness and the following occurred:

"Q. I want you to state whether or not Mr. Stewart, when he came up there, did not say to Mr. Bruce, 'What can you do to fix this up?' and did not Mr. Bruce say, 'I may be able to pry it up with the crowbar,' and did not Mr. Stewart say, 'Go ahead.'

"Objected to.

"The Court: You did not ask Mr. Stewart that question; you might lay the foundation now if you desire.

"Mr. Meriwether: I asked him if he gave any orders to Mr. Bruce, and he said, 'No; not to do anything.'

"The Court: If he said that it would be sufficient.

"To which ruling of the court counsel for defendants then and there duly excepted.

"(Last preceding question repeated).

"Objected to as leading and on the further ground that it can only be asked after a proper foundation has been laid.

"The Court: I think that is the rule.

"Q. What did Mr. Stewart say?

"A. He asked Mr. Bruce, 'Are you going to pull the

stone?' and he said, 'I think I can pull it in.'   He said, 'Can you pull it in?' and Bruce said 'Yes,' and he said, 'Well, go ahead,' and then we got two little crowbars and pulled it in. We were on an iron column, Bruce on one side and I was on this side, and the whole thing shot clear out and I had to grab hold of the column.

"Motion to strike out the last answer on the ground that no foundation has been laid.   No question asked Mr. Stewart whether he had any such conversation.

"Overruled.   To which ruling of the court counsel for defendants then and there duly excepted."

There is no allegation in the petition that the stones were precipitated onto the respondent by an act of the workmen in an endeavor to push them back in place, done on an order given by Stewart.   The evidence was in rebuttal and could have but one effect, that is to impeach Stewart by saying that he had not told the truth as to his conversation with Bruce in respect to the stones.

In respect to this character of impeaching evidence, "The rule," said Chief Justice WAITE, "is that the controverted declaration of the witness, whether oral or in writing made at another time, can not be used for the purpose of impeachment until the witness has been examined upon the subject and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or exculpation, if he desires to make it."   The Charles Morgan, 115 U. S. 69; The State v. Yocum, 117 Mo. 622; The State v. Smith, 114 Mo. 406; Carder v. Primm, 52 Mo. App. 102.

Stewart had testified of the conversation he had with Bruce.   If respondent was not satisfied with his version of that conversation, in fairness to the witness, he should have called his attention to the particular part of the conversation that he desired to bring out and to which the witness did not testify, before being permitted to show by way of impeachment that the conversation was not as witness had stated it.

II. Appellants' contention is that instruction B, given for respondent, is too general, and that he should have specialized the acts of negligence and should have used the words "reasonable care" after the word "failure" in the third line of said instruction. The petition counts on the failure of appellants to properly secure the stones in the wall of the building, and it is practically admitted that some appliance should have been used to secure the dental course of stones before the molding course was put on. The evidence for respondent was that no appliance whatever was used; that of appellants that a sufficient anchorage was used to secure the stones to make them safe. The instruction is grounded on this state of the evidence as to this particular alleged failure of appellants to use due care in securing the stones and is sufficiently specific. If no appliance was used to secure the stones, that fact alone is conceded to be proof of a lack on the part of appellants to have used due care; for this reason it would have been improper to submit to the jury to find whether or not appellants used due care to secure the stones, the only issue being whether any appliance at all was used.

III. Instruction C for respondent is indefinite and it is not readily seen what phase of the evidence was in the mind of the court when it was given. If it has reference to the dragging of the stone when it was raised or jerked up, after it had been first set on the wall, it should not have been given, as there is no allegation in the petition on which to base it and no evidence, save that of Conley in rebuttal, on which to predicate it. If it has reference to securing the stone in the wall then it is an indefinite repetition of instruction B and should not have been given.

IV. With the exception of the first paragraph, instruction U given by the court on its own motion, fairly and intelligently submitted to the jury the issues based on the alleged negligence of appellants in the use of the lookout. There is no evidence that the lookout mentioned was not such

an appliance as builders of ordinary prudence would use in similar circumstances, or any that such an appliance is not a reasonably safe one when properly secured and used. The first paragraph of the instruction is without evidence to support it.

The issue made by the evidence was in the location of the lookout in respect to the stone that was raised, and the instruction should have been confined to this issue. It is proper to remark here that there is not a ray of evidence to be found anywhere in the bill of exceptions, that respondent was guilty of contributory negligence. All the evidence on this point is that he was at work at the place where he was put to work by appellants, and doing what he was directed to do; that he had no part or lot in the placing of stones in the wall or in locating or using the lookout. He was not warned of any dangerous condition of the wall and had no apprehension of danger until his leg was crushed beneath the falling stones, and the element of contributory negligence should be eliminated from the instructions.

V. Instruction F on the measure of damages, after telling the jury to take into consideration all the elements of respondent's damages, including what he will sustain in the future as the direct result of the injury, further tells the jury to "consider all the facts and the circumstances in evidence." This latter clause is criticised by appellant. It is, perhaps, a useless clause, but we do not hold that it vitiates the instruction. The facts and circumstances in evidence, to which the jury's attention was called, were facts and circumstances that tended to prove the damages and not all the facts and circumstances brought out by the evidence.

VI. The court erroneously refused the following instructions asked by appellants:

"2. If you believe from the evidence that the lookout used to hoist the stone was fastened to an iron girder, and extended about two feet beyond the line of the wall of the

Brown building, and was the usual appliance used in the construction of such buildings by which stone was hoisted, and you further believe from the evidence that said lookout as fastened and used was reasonably safe for the hoisting of the stones in question, then the defendants were not guilty of negligence in using it.

"3.   The court instructs the jury that the defendants did not insure the safety of the plaintiff, nor the absolute safety of the appliances and materials furnished him and his fellow-servants for the erection of the Brown building.   The defendants were only required to use ordinary and reasonable care and foresight in procuring and using such materials and appliances for the said purpose of erecting said building.

"9.   The court instructs the jury that the defendants did not insure the safety of the plaintiff while he was working in their employment, and did not guarantee that he would not be injured while working for them; and that, therefore, the plaintiff can not recover in this case, unless you believe from the evidence, under the instructions of this court, that plaintiff's injuries were caused by the negligence of the defendants.

"10.   The court instructs the jury that the fact that plaintiff was injured is, in itself, no evidence of any negligence on the part of the defendants, but, on the contrary, the plaintiff must, by his evidence, show that the defendants were guilty of negligence.   And the burden of proof is upon plaintiff to establish such negligence by the greater weight of evidence."

A master does not insure the safety of his servants, and the jury should have been so instructed.   Gutridge v. The Mo. Pac. Ry. Co., 105 Mo. 520; Brown v. L. & L. Co., 65 Mo. App. 162; Higgins v. The Mo. Pac. Ry. Co., 43 Mo. App. 547.   The burden was on the plaintiff to prove his case by a preponderance of the evidence and the jury should have been so instructed.

VII.   The only grounds of negligence alleged in the

petition, and of which there is any evidence, are, first, the failure of appellants to properly secure the dental course of stone, and second, to place the lookout in a safe position for raising and lifting stone. The laying of the dental course was under the immediate supervision of Stewart, the general superintendent, and the location of the lookout was under the direction of Casey, the foreman. Respondent was not a fellow-servant of either of these and we see no place under the evidence for the instruction asked by appellants concerning fellow-servants. Miller v. The Mo. Pac. Ry. Co., 109 Mo. l. c. 356; Foster v. The Mo. Pac. Ry. Co., 115 Mo. l. c. 180; Berry et al. v. The Mo. Pac. Ry. Co., 124 Mo. l. c. 249; Card v. Eddy, 129 Mo. l. c. 516; Steube v. Iron & Foundry Co., 85 Mo. App. 640.

In Raming v. Metropolitan St. R. Co., 157 Mo. 477, 57 S. W. Rep. 268, it was ruled that an allegation that an injury was inflicted through the negligence of defendant and by his willful act nullified itself, that the same act could not be both negligent and willful. On the authority of this case the appellant contends that the petition states no cause of action because of the following allegation: "That the injuries resulting from the falling of said stone or stones and the loss of plaintiff's leg were in nowise due to any fault or neglect of plaintiff, but were the result of defendants' gross negligence and carelessness and want of reasonable care in erecting the Brown building and in using proper materials and proper appliances for the fastening and securing of said stones as hereinbefore set forth, in wanton disregard of the safety of plaintiff." The word "wanton" does not signify willful, but as used in the petition means recklessness or heedless inattention to duty. Its use, therefore, does not negative the allegations of negligence, but intensifies them.

For the errors herein noted, the judgment is reversed and the cause remanded. *Barclay, J.*, concurs; Judge *Goode* concurs in result. Judge *Barclay* concurs on the ground of error in giving instruction marked "U."