FRANK MACKLIN, Appellant, v. FOGEL CONSTRUCTION COMPANY.—31 S. W. (2d) 14.

Division One, September 4, 1930.

40

*E. C. Hall* for appellant; *Atwood, Wickersham, Hill & Chilcott* of counsel.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau, George J. Mersereau* and *Winston H. Woodson* for respondent.

FRANK, J.—Suit by appellant, plaintiff below, to recover damages for alleged personal injuries. Plaintiff recovered judgment in the sum of $12,833. Defendant's motion for a new trial was sustained and a new trial granted on the ground that defendant's demurrer to plaintiff's evidence should have been given. Plaintiff appealed.

Plaintiff was in the employ of respondent, Construction Company, and at the time of his alleged injury he, with another employee, was engaged in unloading large heavy timbers from a railroad car.

The petition, among other things, alleges that plaintiff was in the employ of defendant; that defendant was unloading a car of heavy timbers; that defendant's superintendent ordered and directed plaintiff and one Gooch to unload said timbers from said car; that said timbers were fourteen inches square, eighteen feet long, weighed about eight hundred pounds, and were too heavy for two men to handle without danger of being hurt; that said timbers and said car were wet and slippery; that defendant negligently ordered plaintiff to unload said timbers from said car without sufficient help and without proper tools; that plaintiff protested, but was assured by defendant that he could safely proceed to unload said timbers and that plaintiff relied on said assurance; that plaintiff was not accustomed to unloading such timbers and knew nothing of the facts aforesaid, but that defendant knew or by the exercise of ordinary care should have known all of said facts and that said place was not a safe place for men to work and that plaintiff did not have sufficient help or proper tools with which to do said work; that plaintiff relied on the superior knowledge of defendant's superintendent, and while attempting to unload said timbers by rolling them from said car as directed by said superintendent, said timbers being too heavy and very slippery, plaintiff was thrown from his hold and footing on said car and said timbers, and fell to the ground below and was seriously and permanently injured.

The answer contained: (1) a general denial; (2) a plea of contributory negligence; (3) assumption of risk; and (4) a plea of compromise and settlement, alleging that plaintiff accepted from defendant the sum of $495 in full settlement of all claims and demands on account of said alleged injuries and released and discharged defendant from all liability on account thereof.

The reply was (1) a general denial; and (2) a plea that said release was obtained by fraud and misrepresentation. The reply

pleads the facts constituting the alleged fraudulent representations. These we will discuss later.

The evidence shows the following state of facts. Respondent, Fogel Construction Company, was constructing a building in Kansas City and at the time in question was unloading heavy timbers from a railroad car to be used in said building. This was an open coal car with sideboards and ends. The timbers extended about four feet above the sides of the car and were held in place by standards. These timbers were approximately eight by fourteen inches, about fourteen feet long and weighed from six to eight hundred pounds. It had been raining and was still drizzling and the car and timbers were wet and slippery. Plaintiff was in the employ ·of defendant as labor foreman, but he, as well as all other workmen, was under the direction and control of Lile Fogel, defendant's superintendent, at all times when he was present. Plaintiff was not experienced in unloading timbers from a car; had never done that kind of work before. On the day in question, defendant's superintendent was present and directed plaintiff and one Gooch to get on the car and roll the timbers off. The standards had theretofore been removed from the side of the car. In obedience to the orders of the superintendent plaintiff and Gooch climbed on the car for the purpose of ·rolling the timbers off. The timbers had slipped to the east end of the car. The superintendent directed plaintiff and Gooch to . push each timber to the west six or eight feet before rolling it off the car. Plaintiff was on the east and Gooch was on the west end of the car. Plaintiff had to walk on the edge of the sideboard of the car and push the timber. After they had pushed the first timber to the west, the superintendent said, "That is far enough; roll it off." They then rolled the timber off the car, and as it went off, plaintiff slipped, fell to the ground and was injured.

Concerning the cause of plaintiff's fall, he testified:

"Q. What caused you to slip? A. Wet and muddy from the feet. I had hold of the timber—it was wider—it laid flat, and was wider this way than the other (indicating), and when we tipped it, turned it, that is when I slipped off.

"Q. Did it require great effort to tip it? A. All the power I had.

"Q. What were you doing when your foot slipped? A. I was turning this timber over. . . .

"Q. How did the accident happen? A. Well, when we rolled the timber, see; it was thicker on one side than the other, with the flat side laying on its flat side, and the other fellow was on the other end. I took hold of it to turn it, and so we turned it together, and of course, it was more than I really could lift and—well, I slipped, or rather the timber jerked me. That's when I went off the car. . . .

"Q. How did you happen to fall off? A. Slipped I suppose. It was done so quick I couldn't tell exactly how it was done, I know my foot slipped.

"Q. What caused your foot to slip? A. Lifting too hard; too much of a strain, I suppose."

Concerning plaintiff's effort to get more help, he testified:

"Q. I will ask you if you tried to get men to go up and help you? A. I tried to get more men; they refused to go on account of the rain.

"Q. Was Lile Fogel there at the time? A. He told me to get all I could to go and work. . . .

"Q. And you went out there this morning, and you had how many men there with you, five or six? A. There was—he told me to get men to go and unload it. I could not get them to come at first; they said they did not want to work in the rain; finally he said, 'Get somebody to help you.' I got Gooch to say he would help. He said, 'If you can't do any thing else roll it off the car.'"

Plaintiff recovered judgment and a new trial was granted on the ground that the demurrer to plaintiff's evidence should have been given. The only specification of negligence submitted to the jury was that of insufficient help to unload the timbers with safety. We will consider the sufficiency of the evidence from that standpoint.

Lile Fogel, defendant's superintendent, was present and directed plaintiff to get men to go and unload the car; to get all he could to go and work. Plaintiff tried to get the men to help him, but they all refused to go on account of the rain except one, Gooch. Finally the superintendent said, "Get somebody to help you." Gooch promised to help and he and plaintiff were directed to get on the car and roll the timbers off if they could not do anything else. In attempting to do so plaintiff was thrown to the ground and injured. The substance of his testimony is that the timbers were too heavy for him to lift; that it required all of his power to turn them over; that the heavy lifting caused his foot to slip and the timber jerked him from the car. Gooch testified that he and plaintiff were not unloading the car, but were attempting to make skids at each end of the car by placing one end of the large timbers on the ground and the other against the side of the car, then the car could be unloaded by sliding the timbers down the skids. He further said that only two men were necessary to make the skids, but it would have required another man or two to have lifted the timbers onto the skids. While a part of Gooch's testimony is contrary to that given by plaintiff, in ruling the demurrer, we must accept as true all evidence favorable to plaintiff, and reject that which is unfavorable. Viewing the evidence in that light we cannot say, as a matter of law, that there was no evidence that plaintiff did not have sufficient help to unload the timbers with reasonable safety. [Smith v. Greer,

257 S. W. 829; Bowman v. Kansas City Electric Light Co., 213 S. W. 161, 165; Lewis v. American Car & Foundry Co., 3 S. W. (2d) 282, 285.]

Neither can it be said that plaintiff assumed the risk. Defendant's superintendent was present and ordered plaintiff and Gooch to do the work. It was the superintendent's duty to know whether or not two men could do the work with reasonable safety to themselves. The fact that the superintendent was present and ordered and superintended the work, amouted, in effect, to an assurance that it was safe for plaintiff and Gooch to proceed with the unloading of the timbers in the manner directed by the superintendent. [Sullivan v. Hannibal & St. Joseph Railroad Co., 107 Mo. 66, 78, 17 S. W. 748; Herdler v. Buck's Stove & Range Co., 136 Mo. 3, 17, 37 S. W. 115.] If plaintiff did not know, or by the exercise of ordinary care would not have discovered the peril he would encounter in attempting to unload the timbers with one helper, he did not assume the risk. He would not assume a risk of which he had no knowledge. Plaintiff testified that he was inexperienced in that kind of work; that he had never unloaded timbers from a railroad car. The size of the timbers was not such as to indicate to a man of ordinary prudence without experience in that kind of work, that it would be dangerous for two men to undertake to unload them from the car. In this situation, it cannot be said, as a matter of law, that it was one of the ordinary risks of plaintiff's employment which he assumed. [Ford v. Dickinson, 217 S. W. 294, 299, 300; Schlueter v. East St. Louis Connecting Ry. Co., 296 S. W. 105, 114, and cases there cited.] If, as the evidence tends to show, defendant's superintendent knew, or should have known, that two men could not unload the timbers with reasonable safety, he was negligent in ordering them to attempt it. The servant never assumes the negligence of the master. A servant may be guilty of contributory negligence, although the cause of his injury was not a risk which he assumed on entering the employment of the master. However, what we have already said, disposes of both questions in plaintiff's favor.

Defendant insists that plaintiff failed to prove sufficient facts upon which to submit the invalidity of the settlement and release to the jury. Plaintiff was injured on November 17, 1922, and made the settlement about the first of the following January. Dr. Carbaugh, defendant's physician, treated him from the date of the injury to the date of the settlement. He advised plaintiff to settle his claim against defendant. Plaintiff relied on what this doctor told him as to his physical condition and of his ability to return to work as being sufficient evidence to warrant the submission of the invalidity of the release to the jury.

Defendant contends that the evidence of plaintiff, when considered as a whole, shows that Dr. Carbaugh advised plaintiff that he was going to be all right; that he would be able to do light work the latter part of January and would be able to do heavy work by the 15th of February. If defendant's version of this evidence be correct, it would show nothing more than the doctor's opinion as to what plaintiff's condition would be in the future and would not amount to a false or fraudulent representation. Mere expression of opinions cannot be made the basis of a charge of fraud. However, we do not so read the record. While there is some evidence, if standing alone, that would support defendant's contention, yet when considered as a whole, the evidence shows that at the time Dr. Carbaugh was attempting to induce plaintiff to settle his claim, he gave him positive assurance of his then physical condition. Concerning this question, plaintiff testified:

"Q. Then what did you do, have anybody else treat you? A. No, sir. Well, sir, he came to me, and he put me under the light one day and he came to me and he said, 'Macklin,' he said 'Mr. Barry wants to see you.' He said he was the insurance man, and he says, 'You had better go over and talk to him.' I said 'I don't want to talk to him until I am all right, Dock.' He said 'Mack' (he always called me 'Mack'), he said, 'You are all right.' He said, 'You are fine and dandy.' He said, 'Go over and talk to him.' I went over and talked to him.

"Q. To whom, Barry? A. Yes, sir; and he made me a proposition—wanted to pay me half time for the time I had lost, and I told him, I said, 'I have to go back and see the doctor again before I will say what I will do.' Well, the next day I went back to the doctor for my treatment.

"Q. Doctor—A. (Interrupting) Dr. Carbaugh. I told him what Mr. Barry had said. I said, 'Dock, I want to know positive if I am all right.' I said, 'Now, I am going to take your word for it. If you say I am all right, that's what I want. I want to go to work, if able to go to work, I will settle with him.' He said, 'You can go right to work in the morning.' He said, 'You can't do heavy the first few days, but by the 15th of February, you will be able to do heavy as you ever did.' I said, 'If you are sure of that, I will try to settle.' He said, 'You go ahead and settle, if you settle before you go to work, you will get more than you will get after you go back to work.' . . .

"Q. What did you do? A. I went back over to Mr. Barry, and he made me then this other proposition—he would give me fifteen weeks full pay; that is when I settled with him."

This evidence tends to show that what Dr. Carbaugh told plaintiff was not a mere expression of an opinion, but was a positive representation of an existing fact. If it was not true and served to

induce the making of the settlement, it amounted to fraud. [Wingfield v. Railroad Co., 257 Mo. 347, 166 S. W. 1037.] Other physicians who examined plaintiff testified that his injuries were permanent. At the time of the trial which occurred about two and one-half years after the injury, plaintiff testified that every step he took hurt him; that he could hardly walk over a rough place and was not able to do work of an ordinary nature.

On the question of tender Mr. Hall, plaintiff's counsel, testified that before this suit was brought, he went to the office of the Fogel Construction Company and told Mr. Fogel that he represented plaintiff and had come to tender back the money plaintiff had received at the time he executed the release to defendant, and that Mr. Fogel told him that he would not accept it. This was a sufficient tender. [Stephenson v. Kilpatrick, 166 Mo. 262, 65 S. W. 773.]

The evidence touching the invalidity of the release was sufficient to take that question to the jury.

Plaintiff contends that defendant is estopped to insist that its demurrer to the evidence should have been given. This contention is based on the claim that defendant waived its demurrer by asking and receiving instructions submitting its theory of non-liability on the several issues made by the pleadings and proof, after its demurrer had been overruled. Torrance v. Pryor, 210 S. W. 430; Herod v. St. L. S. F. R. R. Co., 299 S. W. 74, 79; State ex rel. v. Allen, 272 S. W. 925, 927; Davison v. Hines, 246 S. W. 295, 303, are cited in support of this contention.

The cases cited hold, and correctly so, that where two or more acts of negligence are charged in the petition, either of which standing alone, would, if supported by proper proof, make a submissible case for the plaintiff, and a general demurrer to the evidence is overruled, and thereafter defendant requests and is given instructions submitting certain issues to the jury, the demurrer is waived and defendant is estopped from asserting that such issues are not in the case.

In McMahon v. Greenspon's Sons Iron & Steel Co., 267 S. W. 83, the rule is thus stated: "It is our understanding that the rule is that, where several assignments of negligence are contained in the petition and a general demurrer to the evidence is interposed, with no request that any particular assignment be withdrawn from the jury, then, if defendant joins in submitting the case on instructions on any particular theory or cause of action, he is precluded from saying that such doctrine is not in the case. But, where there is but one assignment of negligence, as here, the demurrer to the evidence is not abandoned by defendant in offering instructions on such theory."

The rule for which plaintiff contends has no application to the facts in the instant case. Here plaintiff's petition and the evidence offered in support thereof presented only one assignment of negligence for consideration, and that was, whether or not defendant was negligent in ordering plaintiff to unload the timbers without furnishing him sufficient help to do the work with reasonable safety. True, the petition alleged that defendant negligently failed to furnish plaintiff with proper tools with which to do said work, but no evidence was offered in support of this allegation and no claim is made here that such assignment is now an issue in the case. Defendant's answer alleged that plaintiff's claim for damages was compromised and settled and defendant was released from all liability on account thereof before the institution of this suit. Plaintiff by way of reply admitted the settlement and release but alleged that the same was procured by fraud and misrepresentation on the part of defendant. Plaintiff having admitted the execution of the release, it is binding on him unless it was procured by fraud and the burden of proving it was so obtained was on the plaintiff.

The pleadings on the part of plaintiff present two issues: (1) that defendant was negligent in ordering plaintiff to do the work without sufficient help, and (2) that the settlement and release of plaintiff's claim was procured by fraud and misrepresentation. Conceding that plaintiff was injured by the negligence of defendant, he would have no case if his claim had been fairly settled. It therefore follows that the burden was on plaintiff to prove not only the negligent acts of defendant which caused his injury, but also the alleged fraudulent act of defendant in the procurement of the settlement. If he failed in either or both, no case was made. A general demurrer challenges the sufficiency of the evidence to make a submissible case. As the burden was on plaintiff to prove both issues in order to make a case, defendant's general demurrer challenged the sufficiency of the evidence as to both issues. This being true, defendant did not waive its demurrer by asking and receiving instructions as to both issues. [Mills v. Steadley & Co., 279 S. W. 160; Sabol v. Cooperage Co., 313 Mo. 527, 282 S. W. 425, 432-3; Clay v. Mo. Pac. Ry. Co., 5 S. W. (2d) 409, 412; Goodson v. Schwandt, 318 Mo. 666, 300 S. W. 795, 797; Doerr v. Insurance Co., 315 Mo. 266, 285 S. W. 961, 962; Parker v. Frisco Ry. Co., 297 S. W. 146, 148; Hoelker v. American Press, 317 Mo. 64, 296 S. W. 1008, 1010.] Giving the defendant the benefit of the demurrer, we regard the evidence as sufficient to authorize the submission of both issues to the jury and hold that the trial court erred in granting defendant a new trial on the ground that the demurrer to plaintiff's evidence should have been sustained.

Although the trial court erred in granting a new trial on the grounds assigned, if other grounds of the motion for a new trial, although not assigned by the court, justify the court's action in granting a new trial, such action will be sustained. [Manthey v. Kellerman Contracting Co., 311 Mo. 147, 277 S. W. 927; State ex rel. v. Thomas, 245 Mo. 65, 149 S. W. 318.]

Defendant contends that the court erred in giving plaintiff's instructions numbered one, two and three.

Instruction number one hypothesized all of the facts necessary for the jury to find in order to convict the defendant of negligence in ordering the plaintiff to do the work without sufficient help, then directed the jury that in event it found such facts, to return a verdict for plaintiff unless it found for defendant under other instructions in the case.

This instruction directed a verdict, yet it ignored the question of the invalidity of the settlement and release, an issue which the plaintiff was required to prove in order to make a case. An instruction which omits one of the necessary elements of plaintiff's case but nevertheless directs a verdict is erroneous and cannot be cured by including the omitted elements in other given instructions. [Heigold v. United Rys. Co., 308 Mo. 142, 157, 271 S. W. 773; State ex rel. Long v. Ellison, 272 Mo. 571, 582, 199 S. W. 984.] However, an instruction which omits to include, in express terms, all the elements necessary to a directed verdict, but nevertheless directs a verdict, is not erroneous if it properly refers to and incorporates within its terms, other given instructions which properly submit such omitted elements.

It is claimed that the failure of plaintiff's instruction to submit the question of the validity of the release was cured by the giving of defendant's Instruction D-4 which did submit that question. The trouble with this contention is that plaintiff's instruction did not refer to defendant's Instruction D-4 in terms sufficient to make it a part of plaintiff's instruction, or to inform the jury that it must find the release invalid before a verdict for plaintiff was authorized. Plaintiff's instruction referred to *"other instructions in the case."* The other instructions to which plaintiff's instruction referred covered the questions of accident, contributory negligence, assumption of risk, burden of proof, validity of the release, etc. The lay mind would not understand from the general reference to all of these subjects, that the question of the validity or invalidity of the release should be selected therefrom and treated as a necessary element of plaintiff's case and decided in his favor before a verdict for him would be authorized. For the reasons stated, we hold that the giving of defendant's Instruction D-4 did not cure the error in plaintiff's Instruction No. 1.

The substance of plaintiff's Instruction No. 2 was that if the jury found that defendant procured the release from plaintiff by fraud and misrepresentation, and if plaintiff within a reasonable time after discovering such fraud, if any, repudiated the settlement and tendered back to defendant what had been paid thereon, then such release was not binding on plaintiff. This instruction did not submit to the jury any facts which, if found by it, would constitute fraud. It submitted a question of law to the jury and gave it a roving commission to speculate as to what facts would constitute fraud. It should not have been given. [Menefee v. Scally, 247 S. W. 259, 261.]

It is next claimed that the court erred in giving plaintiff's Instruction No. 3. This was an instruction on the measure of damages. This instruction informed the jury that in estimating plaintiff's damages, it should take into consideration certain elements (naming them), *together with the other facts and circumstances in evidence in the case*. (Italics ours.) The italicized portion of the instruction is the part to which objection is made.

The contention is that the language to which objection is made, amounted, in effect, to an instruction on punitive damages by authorizing the jury to consider facts and circumstances which did not touch the question of damages, such as liability insurance, alleged fraud in procuring the release, etc. The instruction is not open to this criticism. It concludes by directing the jury to assess plaintiff's damages at such sum as will reasonably compensate him for his injuries. Ordinarily intelligent jurors would understand the direction to consider "the other facts and circumstances in evidence in the case" to mean an authorization to consider other facts and circumstances bearing on the question of plaintiff's injuries, because the instruction told the jury in unmistakable language to assess plaintiff's damages at such sum as would reasonably compensate him for his injuries. If the record contained facts and circumstances tending to prove injuries for which plaintiff was not entitled to recover because not pleaded, or if the instruction contained language calculated to cause the jury to believe it could assess damages by way of punishment to defendant, a different question would be presented, but such is not the case. The instruction in the form given has been approved. [Kelly v. Stewart, 93 Mo. App. 47, 59; Griffin v. Kansas City Railways Co., 204 S. W. 826, 828.]

It is next claimed that the court erred in refusing defendant's requested instructions D-11 and D-13. D-11 directed the jury that it could not base a finding of negligence on the fact that only one man assisted plaintiff in unloading the timbers at the time in question.

This instruction was, in effect, a demurrer to the evidence and for reasons heretofore stated was properly refused.

D-13 was an instruction on assumption of risk. It declared that plaintiff assumed all ordinary risks incident to his employment and if his injuries were caused by one or more of such ordinary risks he could not recover, and in that connection directed the jury that if it found that the place where plaintiff was working and walking and standing was wet and slippery, such condition was an ordinary risk which plaintiff assumed and defendant could not be held liable therefor. It was not error to refuse this instruction. If it had been given it would have tended to cause the jury to believe that if the place where plaintiff was working was wet and slippery, and plaintiff slipped and fell from the car, he could not recover regardless of what caused him to slip and fall.

The final contention is that the verdict is excessive. As the action of the court in granting a new trial must be affirmed and the cause remanded, it is not necessary to determine this contention.

Error in the giving of plaintiff's instructions one and two justified the action of the court in granting a new trial and for that reason the judgment is affirmed and cause remanded. All concur.