HUNT, Respondent, v. THE DESLOGE CONSOLI-
DATED LEAD COMPANY, Appellant.

### St. Louis Court of Appeals, February 16, 1904.

1. **FELLOW-SERVANT.** Where the superintendent of a mill put
   the employees under the control of a shift boss whose duty it
   was to direct them when and how to work, whose orders they
   were required to obey, the boss represented the company oper-
   ating the mill and was not the fellow-servant of the employees
   under him.

2. **EVIDENCE: Assumption of Risk: Notice to Employer of Em-
   ployee's Inexperience.** In an action for damages sustained by
   plaintiff in the death of her husband, who lost his life by reason
   of being put to work by defendant in an unsafe place, where the
   answer sets up assumption by deceased of the risk incident to
   the employment, and the evidence shows deceased was wholly
   inexperienced in that line of work, it was not error for the trial
   court to permit a witness to testify that he told the boss in
   charge deceased was a "green hand" and it was not safe to
   put him at such work.

3. ———: **Opinion of Witness.** Nor was it error for one witness
   to state what he thought the boss meant by certain directions
   given to him (the witness) where the evidence shows that such
   directions could have meant nothing else.

4. ———: ———: **The Usual Method of Doing Work.** Nor was
   it error to show the usual method of doing the work which de-
   ceased was put to do, and that it was unsafe to do it in the
   condition the place was in, when the facts showed that it was
   unsafe.

5. **INSTRUCTIONS: Correct as a Whole: Judgment for Right
   Party.** Although the wording of some of the instructions is
   open to criticism, yet, when all considered together, they are
   substantially correct, and the verdict was manifestly for the
   right party, the judgment will be affirmed.

Appeal from St. Francois Circuit Court.—*Hon. Robt.*
*A. Anthony,* Judge.

AFFIRMED.

*Merrifield W. Huff* for appellant.

(1)   The court erred in allowing Frank Burlbow, one of plaintiff's witnesses, over the objection of defendant to tell the jury of his having called Sherin's attention to the fact that deceased Hunt was a green man and that it was not safe for him to work at the ash-pit. Gutridge v. Railroad, 94 Mo. 468; Boettger v. Scherpe, etc., Iron Co., 136 Mo. 531; Langston v. Railroad, 147 Mo. 457; Nash v. Dowling et al., 93 Mo. App. 156; King v. Railroad, 98 Mo. 235. (2)   The court erred in allowing Beaumont to state what he thought Sherin meant by certain directions alleged to have been given to him. Pugh v. Ayres, 47 Mo. App. 598.   (3) The court erred in allowing witness Longrear over defendant's objection to tell the jury what had formerly been his custom as to cleaning the ash-pits and also allowing this witness to tell the jury that it was unsafe to allow Hunt to go into the pit as he did.   (4) The court erred in refusing to sustain defendant's objection to the testimony both at end of plaintiff's case and at the end of the whole case.    Parker v. Railroad, 109 Mo. 362; Foster v. Railroad, 115 Mo. 165; Sullivan v. Railroad, 97 Mo. 113; Sherrin v. Railroad, 103 Mo. 378; Marshall v. Schricker, 63 Mo. 308; Schaub v. Railroad, 106 Mo. 74; Card v. Eddy, 129 Mo. 510; Hawk v. McLeod, 166 Mo. 121.   (5)   The court erred in giving plaintiff's instruction numbered 2, for the reason that said instruction tells the jury that defendant is guilty of negligence and plaintiff entitled to a verdict, provided defendant's agents (whether vice principal or fellow-servant) directed Hunt to go into the pit.   This instruction is   misleading and not cured by any subsequent one.   Voegeli v. The Pickle Mfg. Co., 49 Mo. App. 643; Mansur v. Botts, 80 Mo. 657; McNichols v. Nelson, 45 Mo. App. 446; Carder v. Primm, 60 Mo. App. 423; Linn v. Massillon Bridge Co., 78 Mo. App. 111; Land & Lumber Co. v. Moss Tie Co., 87 Mo. App. 167. (6)   This

instruction is further incorrect for the reason that it calls for a verdict of the hypothetical case and at same time in no way calls attention to the proximate cause of the injury. The negligence was clearly not in ordering Hunt into the pit, but in turning the water into the pit, thus generating steam, by which Hunt was scalded. Henry v. Railroad, 76 Mo. 288; Hanlan v. Railroad, 104 Mo. 381; Railroad v. Henderson, 134 Ind. 636; Conger v. Railroad, 86 Mich. 76; Kevern v. Mining Co., 70 Cal. 392; Brown v. Railroad, 20 Mo. App. 226. (7) The evidence does not show Sherin to have been a vice principal. Particularly he was not a vice principal so far as his acts were concerned and hence instruction numbered 5 is erroneous. Rowland v. Railroad, 20 Mo. App. 463; Moore v. Railroad, 85 Mo. 588; Hoke v. Railroad, 88 Mo. 370; Miller v. Railroad, 109 Mo. 356; Garland v. Railroad, 85 Mo. App. 579.

*J. N. Burks, Jerry B. Burks* and *Pipkin & Swink* for respondent.

(1) It was not error to show that the foreman of the boiler cleaning force was notified that the deceased was an inexperienced man, under the pleadings in this case. Donahoe v. Railroad, 83 Mo. 543. The authorities cited by appellant under its first assignment do not apply to this case. The statement of the witness, Burlbow, was as to an actual fact and was not opinion evidence. On the other hand, the mill boss, Flack, a witness for defendant, admits that he knew deceased was a new man, and yet he permitted him to be placed at a dangerous work without instructions or warning. (2) The response of witness Beaumont in answer to the question of counsel as to what was his understanding of the language of foreman Sherin, directed to him and deceased can in no way prejudice defendant and is not reversible error. Shortel v. City of St. Joseph, 104 Mo. 114; Halliburton v. Railroad, 58 Mo. App. 27. (3)

Counsel for appellant misconceives the purport of instruction No. 3, on the question of assumption of risk, given at request of plaintiff. In any event it is not open to the objection leveled against it. The testimony shows that deceased was inexperienced and knew nothing about the ash-pit, and his only opportunity for knowledge of its condition was during the period he was working at it just prior to his injury. The latter part of this instruction presents this phase of the case to the jury. Halloran v. Iron & Foundry Co., 133 Mo. 407; Watson v. Coal Co., 52 Mo. App. 366; Riechla v. Gruensfelder, 52 Mo. App. 43; Beard v. Car Co., 63 Mo. App. 382. (4) Instruction No. 5 correctly states the rule as to what constitutes a vice principal, and we here again say that under the well-considered cases in this State and by the greater weight of authority, this man, Sherin, was a vice principal or *alter ego* of the company and performing a duty (in directing the men where and how to work) that was personal to the company. The superintendent was absent on this occasion, and it is conceded by defendant that Sherin had the right to direct and control the work and show the men where to work and was told by the mill boss on this occasion to scatter his men and get his work done. Bane v. Irwin, 172 Mo. 307; Steube v. Iron & Foundry Co., 85 Mo. App. 640; Cox v. Synite Granite Co., 39 Mo. App. 424; Haworth v. Railroad, 94 Mo. App. 215; Grattis v. Railroad, 153 Mo. 380; Glover v. K. C. Bolt & Nut Co., 153 Mo. 327; Miller v. Railroad, 109 Mo. 345; Dayharsh v. Railroad, 103 Mo. 570.

BLAND, P. J.—The defendant is engaged in mining and reducing lead ores in St. Francois county, Missouri, and has over its mine a large mill or reduction works. To generate steam to propel the machinery of the mill, it has a boiler or battery room located forty or fifty feet from the mill. In this boiler room are three boilers, two of the Heine, and one of the Babcock make,

with separating or partition walls between. There is a space of about four feet between the rear of the Heine boilers and the rear brick wall of the engine room. The boilers are fed from the front and cleaned from the back. Back of these two boilers is a stage or platform four feet above the ground, on which the men stand to clean out the boilers. Under this stage, immediately behind the boilers, is an ash-pit six by eight feet which is entered by a manhole under the stage, and on a level with the ground surface. The wall separating the ash-pit and the fire chamber is called a bridge wall and is so constructed that the flames and smoke from the fire chambers pass over it, carrying the ashes from the furnace and dropping them into the ash-pits. The ashes are allowed to accumulate in the pits for three weeks before they were cleaned. These ashes were very hot, and the usual and safe way to clean them out was to turn water into the pits and cool them down and then shovel them out with a long-handled shovel. On August 11, 1901, (which was Sunday), Frank Hunt, plaintiff's husband, a newly employed hand, with J. A. Beaumont, was directed to take the ashes out of one of these pits. Hunt entered the pit through the manhole, a hose was handed to him by Beaumont, water was turned on and in a few minutes Hunt came out of the manhole so badly burned and scalded that he died on the following Wednesday. Plaintiff, who is Hunt's widow, sued to recover damages sustained by reason of the death of her husband which she alleges was occasioned "solely by the negligence, carelessness and recklessness of the defendant company in that it negligently failed to furnish and provide him a reasonably safe place in which to work; negligently failed to have the ash-pit and ashes therein sufficiently cooled before directing said Hunt to enter the ash-pit; negligently caused the water to be turned into the pit while the ashes were hot and negligently ordered said Hunt into a dangerous and unsafe place to work, knowing at the time he was not familiar

with the work required of him; negligently employed and retained in its employ incompetent and inexperienced help to assist said Hunt, and negligently and knowingly retained in its employ as foreman of said work the aforesaid Sherin who was incompetent, inexperienced and unfamiliar with the work required of him.''

She further alleges, ''that defendant knew of the unsafe and dangerous condition of said pit; that it was unsafe for her husband to enter the same; knew that the colaborers with Hunt were inexperienced and incompetent, and knowing these facts, retained them in its employ. And alleges that had defendant used due care and caution such as was incumbent upon it and provided a reasonably safe place for her husband to work, that he would not have been killed.''

Defendant's answer was a general denial and the following plea of contributory negligence:

''Further answering, defendant alleges that plaintiff's husband was a man of mature years, good judgment and a good degree of experience in life; that he well understood the business he was engaged in; that he knew whether it was safe for him to enter the place where he met with the accident that resulted in his death notwithstanding which he, of his own volition, entered into the place where he received the injuries which resulted in his death; that he entered the same of his own accord and without any command or direction from the defendant; wherefore, defendant alleges that he assumed the risks attending such actions and conduct and is therefore estopped from asserting any claim for the injuries, and prays judgment.''

The new matter alleged in the answer was put at issue by a reply. The jury found for plaintiff and awarded her three thousand dollars damages. After unavailing motions for new trial and in arrest of judgment, defendant appealed.

The evidence shows that John Cline was superintendent of the mill. He had under him two shift bosses —George R. Flack and Ike Meadows. Cline was out of the State on August 11, 1901, and Flack was discharging the duties of superintendent of the mill. Meadows did not appear on the scene. It was the custom when it became necessary to clean out the boilers and ash-pits to select a Sunday for that purpose and for the person who was put in charge of the cleaning to send to the mill boss for five or six hands to do the work. Some one who worked in the boiler room and understood or was supposed to understand how the work of cleaning should be done, superintended the work by directing the men when and how to work. On the Sunday Frank Hunt was fatally injured, John Sherin was placed in charge of the men by Flack and directed to scatter his men. Flack testified that it was Sherin's duty to put the men to work and show them how to do it, but that he had no authority to discharge them; that if a man disobeyed his orders all he could do would be to report the fact to the mill boss; that he was expected to look after the work; that if there was an inexperienced man in the bunch he was not to be put in a dangerous place, that the orders of the company were that no one in the employ of the company had any right to put a man where he would be in danger of getting hurt. There was other evidence to the effect that Sherin had authority to, and did, on the eleventh day of August, superintend the cleaning of the boilers and ash-pits and directed the men where they should work.

Beaumont, a witness for plaintiff, testified that while he was working in front of the batteries, Sherin came around and ordered him to go and help clean out one of the ash-pits; that he went and when he got there he found Frank Hunt; that he never was at the ash-pit before and had never seen Hunt there until that time; that to get into the ash-pit you had to get on your hands and knees and crawl through the manhole; that he-

and Hunt were told by Sherin that one of them would have to go into the ash-pit, and Sherin brought a pump suit (rubber); that he and Hunt both hesitated, that it was a dark looking place, but Hunt finally took the suit and put it on and went into the pit through the manhole. Sherin then told him to hand the hose to Hunt and to tell Hunt not to throw water against the bridge wall, and that he (Sherin would turn on the water; that he handed Hunt the hose, and Sherin went toward the pump, and very soon Hunt came out of the ash-pit hallooing and was badly burned; that at the time steam and ashes were coming out of the manhole; that Sherin was present when Hunt went into the pit; that he (witness) had looked into the ash-pit before Hunt entered it and there was a wet space inside a little larger than the manhole.

Thomas Emory, a witness for the plaintiff, testified that he heard Flack tell Sherin he thought it would be too hot to work in the ash-pit or boilers until the afternoon when Sherin stepped up and turned on the hose; that this was after Flack had ordered Sherin to scatter his men and after Flack and Beaumont had gone from the front end of the boilers.

The evidence further shows that Hunt had been a farmer, living and working on a farm, and that he had worked for the defendant only one day previous to the day he was scalded, and was inexperienced about mining or mill work. The evidence also shows that Sherin was in Farmington (where the case was tried) on a day during the progress of the trial but he was not produced as a witness by defendant nor was his absence accounted for.

Frank Burlbow, a witness for plaintiff, testified over the objection of the defendant, that he told Sherin that Hunt was a "green hand" and that it was not safe for him to work in the ash-pit. Silas Longrear, over defendant's objection, testified as to what had been the custom in cleaning the ash-pits, and that it was unsafe

to enter the pit until the ashes had been thoroughly cooled down.

It was shown that plaintiff was the wife of the deceased Hunt.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant moved for peremptory instructions to find for it which the court refused.

For plaintiff the court gave the following instructions:

"1.  You are instructed that if you shall find from the evidence in this cause that on or about the eleventh day of August, 1901, the deceased Frank Hunt, was an employ of defendant and was as such engaged in cleaning out the ash-pit in the rear of one of defendant's boilers, and that while doing said work he received certain scalds, burns and injuries on account of water being turned into and on the hot ashes in said pit contained, and that said Hunt thereafter on the fourteenth day of August, died from the injuries so received and shall further find that the injuries by him were the direct result of defendant's negligence, if any, as hereinafter defined and that such injury was not the result of any negligence of deceased directly contributing thereto at the time, and shall further find that said Hunt was the husband of plaintiff at the times heretofore stated, then your verdict shall be for the plaintiff in such sum as in your judgment would be a fair compensation to her for the loss of her husband, not exceeding five thousand dollars.

"2.  You are further instructed that if you shall find from the evidence that defendant, by its agents, directed plaintiff's husband to go into the ash-pit to clean it out and knew at the time, or by the exercise of reasonable care could have known, that the ash-pit contained large quantities of hot and smouldering ashes and that they had not been sufficiently cooled, and that it was therefore dangerous and unsafe for Hunt to do the work

in the manner in which he did, then you are warranted in finding defendant guilty of negligence, and the plaintiff is entitled to recover, unless you should further find that Hunt was guilty of negligence in doing the work in the manner and under the circumstances in which he did.

"3. You are further instructed that if defendant knew or by the exercise of reasonable care, could have known, that the ash-pit in which the deceased was at work contained hot and smouldering ashes and was in a dangerous condition, if you should find that it was in fact dangerous, when deceased entered it, and shall further find that deceased was unfamiliar with the special work required of him and did not know the condition of the ash-pit and the danger attending upon the use of it in the manner in which he did, then and in that event he did not assume the risk of injuries arising from doing the said work unless you should find that the danger was so obvious and glaring, considering the position in which deceased was placed and his time and opportunity for discovery, that no prudent man under the same conditions and circumstances could have failed to discover said danger.

"4. You are further instructed that although you may believe from the evidence that when the deceased went into the ash-pit he knew or by the exercise of reasonable care could have known that there was danger in doing so, but if owing to the order of his superior to enter the pit (if you find that he was so ordered) he had reason to believe that he could with safety do the work by the exercise of reasonable care on his part, or if the danger was not so obvious or apparent that a reasonably prudent man similarly situated would have refused to obey the order and shall find that deceased in obeying said order did exercise all the care incident to the conditions in which he was placed, then the deceased was not guilty of such contributory negligence as to defeat a recovery by plaintiff.

"5.  You are further instructed that if you shall find from the evidence that Flack and Sherin, or either of them, was a foreman of defendant having charge of the work being done in its combustion chambers and in control and supervision of deceased and other employes there at work, and as such foreman, had authority to direct them in their work to be done, then and in that event they, or either of them, so invested with such power was a vice principal of defendant, and the acts, orders and directions of either of them so invested with such power, was the act of defendant, and their negligence or the negligence of either, if any, was the negligence of the company.

"6.  You are instructed that if you shall find from the evidence in the case, that the injury to, and death of Hunt was caused solely by the combined negligence of defendant and a fellow-servant of deceased, the plaintiff is entitled to recover, and though you should find that his death was caused solely by the negligence of a fellow-servant, still if you should further find that such servant was inexperienced and unfamiliar with the work of cleaning combustion chambers, and shall further find that defendant, its officers or agents knew, or by the exercise of reasonable care, could have known that such servant was incompetent to do the work of cleaning combustion chambers when it employed and placed him at such work, then you are justified in finding defendant guilty of negligence, provided you should further find that deceased did not know of such incompetency or could not have known of it by the exercise of reasonable care on his part.

"7.  You are further instructed that it was the duty of defendant to make or cause to be made the ash-pit in which Hunt was burned reasonably safe for use before causing him to enter the same, if in fact the company or its agents did direct him to go into same, and if you shall find that the duty to make or cause to be made, the ash-pit reasonably safe to work in, was

placed by defendant upon John Sherin, one of defendant's employees and that such employee failed or neglected to cool, or cause to be cooled, the ashes and make the pit reasonably safe for use, then the failure or neglect of John Sherin was the negligence of the company, and if you shall find that deceased had no knowledge or notice of the condition of said pit in time to avoid the injury he received, then and in such event the defendant was guilty of such negligence as to warrant a recovery by plaintiff.''.

1.   We think the court properly denied the defendant's peremptory instructions to find for it.   The evidence shows that Hunt was a "green hand," had never worked at the defendant's ash-pits, knew nothing of their construction or the danger there was in entering one of them, and that he went into the pit in obedience to Sherin's orders, presumably believing it safe, and either Sherin or Flack turned on the water after he had entered the pit and the hose had been handed to him by Beaumont. It is admitted that Flack at the time was acting as superintendent of the mill and it is shown that Hunt and others employed in cleaning the boilers and ash-pits were placed by Flack under the control of Sherin whose duty it was to direct them when and how to work. They were, therefore, under his immediate control and supervision and were required to obey his orders in the performance of this particular work, hence, he represented the company and was not a fellow-servant of Hunt or of the other employees over whom he was given control.   White v. Kehlor, 85 Mo. App. 559; Steube v. Iron & Foundry Company, 85 Mo. App. 640; Zellars v. Missouri Water & Light Company, 92 Mo. App. 107; Kelly v. Stewart, 93 Mo. App. 47; Haworth v. Railroad, 94 Mo. App. 215; Grattis v. Railway, 153 Mo. 380; Bradley v. Railway, 138 Mo. 293.

2.   The evidence of Burlbow, that he called Sherin's attention to the fact that Hunt was a "green hand" and it was not safe for him to work in the ash-pit, was

not prejudicial to defendant, for the reason it is abundantly shown by other evidence that Hunt was a "green hand" which fact was known or should have been known to Sherin, and that it was not only dangerous for a "green hand," but dangerous to place an experienced man or any one in the pit at the time and under the circumstances existing when Hunt was required to go into it.

3. Beaumont's testimony, that when Sherin handed him the hose and told him to hand it to Hunt, he thought he meant to hand it to him in the pit, was not prejudicial for the reason his evidence shows that Sherin knew that Hunt was in the pit and that he directed Beaumont to hand the hose to Hunt after he had entered the pit and what he thought about it is of no consequence, for the facts are as he thought, and there can be no other meaning to the words and conduct of Sherin than that Beaumont should hand the hose *into the pit to Hunt.*

4. It was not error to permit the witness, Longrear, to testify as to the usual method of cleaning the ash-pit and to state that it was unsafe for Hunt to go into it in the condition it was then in, for it is shown beyond the shadow of a doubt that there was no other way to make it safe to clean out the ashes than by first turning in water and cooling them down, and it was not prejudicial but rather favorable to the defendant that this had been the uniform custom; nor was it prejudicial to permit the witness to state, what every man who heard the evidence must have known, that it was not safe to go into the pits when they were full of red hot ashes and then turn water on them.

5. The instructions given for the plaintiff are criticised by the defendant. An examination of them has satisfied us that, while the wording in some of them is open to criticism, yet when they are all considered together they are substantially correct and properly declare the law of the case as made out by the plaintiff. No error is assigned for refusing some of the instruc-

tions asked by the defendant. Those given for the defendant were as favorable to it as the facts of the case would permit.

The evidence in the cause presents one of the most lamentable deaths caused by the most inexcusable negligence (to call it by no harsher name), it has ever fallen to our lot to examine. The conduct of Sherin in ordering Hunt into the pit filled with three weeks accumulation of hot smouldering ashes and then turning water on them, can be accounted for on no other theory than that he was either ignorant of the work he was chosen to superintend or was reckless of the safety and lives of the men over whom he was given control. The defendant company, it seems from the evidence, gave orders that none of its employees should be required to work in a place of danger. It made a mistake in selecting Sherin as a boss to oversee men in the cleaning of its boilers and ash-pits. His negligence or recklessness caused the death of Hunt, to whom no contributory negligence can be attributed under the evidence in the case, and the defendant should respond in damages occasioned by the negligence of its ill-selected boss.

The judgment is clearly and unmistakably for the right party and is affirmed. *Reyburn* and *Goode, JJ.*, concur.