# W. T. HAWORTH, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, April 29, 1902.

1. **Personal Injuries:** THROWN FROM A HANDCAR: HAZARD OF INJURY NOT ASSUMED UNLESS OBVIOUS. Plaintiff would not be debarred from recovering because he assumed the hazard unless the danger was so great and obvious that a man of ordinary caution would have refused to encounter it.

2. ———: JOINT NEGLIGENCE: VICE-PRINCIPAL AND CO-SERVANT: DEFENDANT LIABLE. Whether plaintiff was injured through the negligence of his co-servant Bodkin and the defendant's foreman Dyson, was a question for the jury, and if found by the jury to be the result of their joint negligence, then the defendant would be liable, but if the result of the negligence of Bodkin alone, then the defendant would not be liable.

3. ———: QUESTION FOR THE JURY. It was a question for the jury to say, whether Dyson, who was foreman and in charge of the car, should have given notice to stop the car at the usual place of stopping it, and whether he was guilty of negligence in failing to do so.

4. ———: VICE-PRINCIPAL, HIS RESPONSIBILITY. A foreman can not divest himself of his responsibility by doing common work with those under him and thereby enable his employer to escape liability for personal injuries occasioned by his negligence.

5. ———: OPINION OF WITNESS: WHEN AN EXPERT. Plaintiff, who had worked four months in the employment of the defendant, was sufficiently qualified to testify as an expert as to the speed of the car, when he was thrown from it.

6. ———: TESTIMONY OF PHYSICIAN: INCOMPETENT. The physician who attended plaintiff and treated him for the injuries complained of, was disqualified from testifying on objection that his testimony was privileged.

7. ———: PROOF AS TO LOSS OF TIME: INSTRUCTIONS AS TO MEASURE OF DAMAGES. An instruction authorizing the jury to find substantial damages for plaintiff for loss of time, when there was no proof offered in support of it, constitutes reversible error.

8. ———: REMITTITUR: COSTS. The offer to remit from the judgment the full amount, which the jury could have allowed on account of loss of time, will authorize an affirmance of the judgment with costs of the appeal taxed against respondent.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore, Cyrus Crane* and *O. L. Cravens* for appellant.

(1) The court should have sustained defendant's demurrer to the evidence, (a) because the negligence, if any, causing plaintiff's injuries was the negligence of a fellow-servant, for which, in the State of Arkansas, defendant is not liable; (b) because there was not sufficient proof of any negligence on defendant's part to warrant the submission of the case to the jury. Sandels & Hill's Digest, Laws of Ark. (1893), secs. 600, 6248 and 6249; Railroad v. Becker (Ark.), 39 S. W. 358; Railroad v. Gaines, 47 Ark. 555; Railroad v. Rice, 51 Ark. 467; s. c., 11 S. W. 699; Railroad v. McCain (Ark.), 55 S. W. 165; Railroad v. Triplett, 54 Ark. 296; s. c., 15 S. W. 833; Railroad v. Brown (Ark.), 55 S. W. 165; Railroad v. Henson, 61 Ark. 302; s. c., 32 S. W. 1079; Railroad v. Gann (Tenn.), 47 S. W. 493; Fordyce v. Stafford (Ark.), 22 S. W. 161; Ryan v. McCully, 123 Mo. 636. (2) Plaintiff's instruction on the measure of damages (No. 4) was wrong in two respects; first, in permitting a recovery of damages for the amount and value of plaintiff's lost time, without evidence as to such value; sec-

ond, in permitting a recovery for an impairment to plaintiff's earning capacity, without allegation or proof thereof. Mammerberg v. Railroad, 62 Mo. App. 563; O'Brien v. Loomis, 43 Mo. App. 29; Mauerman v. Railroad, 41 Mo. App. 348. (3) The court erred in giving plaintiff's instruction No. 1: (a) there was not sufficient evidence to support it; (b) it included as grounds of negligence risks assumed by plaintiff. Ryan v. McCully, 123 Mo. 636; Fordyce v. Stafford (Ark.), 22 S. W. 161. (4) The court erred in excluding the testimony of Dr. H. H. Johnson offered by defendant. R. S. 1899, sec. 4659; Weitz v. Railroad, 53 Mo. App. 39; Webb v. Railroad, 89 Mo. App. 604.

*White & Clay, John T. Sturgis* and *John G. Park* for respondent.

The court rightly overruled the demurrer to the evidence because: (1) The proof showed an inexcusable overcrowding of the handcar, preventing plaintiff taking proper precautions for his safety. (2) The proof also showed, and the jury have found, that the car was being run at an excessively high and dangerous speed. (3) The proof showed that Dyson was entrusted by defendant with the authority of superintendence, control and command of plaintiff, with authority to direct plaintiff in his work, and was therefore vice-principal of defendant and not plaintiff's fellow-servant. Sandels & Hill's Digest, sec. 6248; Railroad v. Rickman, 65 Ark. 138. (4) Plaintiff's instruction No. 4 (on the measure of damages) was correct. It was proven that plaintiff, before his injury, was a strong, healthy young man, twenty-one years old, and a laborer by occupation. Defendant claims the proof was not complete as to value of lost time without showing how much defendant was paying him at the time of the injury. That is not necessarily the value of the time lost. It has been distinctly held that the jury may

determine for themselves the value of time lost by a laborer. Loe v. Railroad, 57 Mo. App. 356, 357; Murray v. Railroad, 101 Mo. 240. (5) This made Cope's testimony competent. The specific objection to this testimony was that the witness's "experience dates back to a period of two years and long prior to this accident." "When a particular status exists, the law will presume its continuance." Cargile v. Wood, 63 Mo. 514; Jennings v. Sparkman, 48 Mo. App. 253. (6) The record showed positively, at the time Dr. Johnson was offered as a witness against his patient, that the doctor had acquired his information while attending plaintiff in a professional character, and such information was necessary to enable him to dress plaintiff's wounds as a surgeon. He was therefore incompetent to testify against plaintiff's consent. R. S. 1899, sec. 4659; Mellor v. Railroad, 105 Mo. 461; Norton v. Moberly, 18 Mo. App. 459; Corbett v. Railroad, 26 Mo. App. 626; Streeter v. Breckenridge, 23 Mo. App. 251. (7) And it was entirely immaterial that the doctor was employed by defendant. Freel v. Railroad, 97 Cal. 40; Raymond v. Railroad, 65 Iowa 152.

GOODE, J.—Haworth, the plaintiff, was hurt by being precipitated headlong from a handcar which was running on the line of the defendant's railway, and instituted this action to recover damages for the injuries sustained.

He was a member of a gang of workmen about thirty-five in number, under the superintendency of James Dyson, whose business it was to ballast and repair the railroad track. Dyson called out his men one morning at the station of Decatur, Arkansas, and had eleven of them, including the plaintiff and himself, get on a handcar to go to a station named Gravett.

The handcar encountered a gravel train about a mile from Decatur, standing on a siding with its rear end projecting on the main track. Dyson ordered it carried around

the train and reset on the track beyond. He also ordered the men at that time to put two switch-points on the car, remarking they would stop at a steel pile, from an eighth to a quarter of a mile further down the track, and get some rail-braces.

A hand named Bodkin was charged with the duty of slackening the speed of the car by placing his foot on a brake which projected above the floor of the car and controlled the speed. After getting the handcar around the gravel train and loading the switch-points, the men resumed their places on it and Dyson told them to pump up and get out of the way of the gravel train, which was backing towards them. There was a very steep grade from that point to the steel pile and the testimony of some of the witnesses is that the car acquired a velocity of twelve or fifteen miles an hour as it went down the grade, instead of six to eight miles which was the usual velocity. When from forty to fifty feet from the steel pile, Bodkin threw his weight on the brake, diminishing the car's momentum so suddenly that four of the men on the front end were thrown from their positions to the ground and the plaintiff seriously injured by the fall and the car running on him after he fell.

The petition contains three specifications of negligence against the defendant; first, that the handcar was run by Dyson at a dangerous rate of speed, to-wit, at the rate of from twelve to twenty miles an hour; second, that Dyson's habit had been theretofore, when directing the operation of a handcar, to give an order (styled a "cautionary command") to stop at from one hundred and fifty to two hundred feet from the place at which it was intended to stop; but that he neglected to give such command on this occasion or to give it at the proper and customary time; third, that the defendant failed to use ordinary care to provide plaintiff a reasonably safe place in which to work, the handcar on which he was ordered to ride being overcrowded, as it contained eleven men

and two switch-points, so that plaintiff's footing was precarious and he had no room in which to brace himself.

A verdict for eleven hundred dollars in favor of plaintiff was rendered.

At the conclusion of plaintiff's evidence, as well as at the conclusion of all of the evidence, an instruction in the nature of a demurrer to plaintiff's case was requested by the defendant and refused. This ruling as well as the rulings on other instructions and on the evidence offered, are assigned as errors.

A careful perusal of the testimony has convinced us the charges of negligence were supported by substantial proof, and that the circuit court ruled correctly in submitting the case to the jury.

The evidence in regard to the speed at which the car was running varied widely, plaintiff testifying it was making fifteen miles an hour, while one witness for the defendant swore its speed was not higher than six miles an hour. Other witnesses testified to eight, ten, and twelve miles. There was testimony also that the usual rate of speed was eight or ten miles an hour. Dyson told the men who were working the handles to pump up in order to escape the gravel train. The grade was steep and if an excessive speed was attained, it was with his knowledge, as he was on the car, and does not pretend he gave any direction to lower it.

That the car was crowded is not denied, but it is claimed there were no more than the usual number of men on it. The question in this connection is, not whether there were more than usual but more than were compatible with the reasonable safety of the men? The speed of the car was so high that the hands who were working the handles had to let go on account of the violent motion, and there was so little room they had to stand at the sides of the handlebars instead of in front of them. There was only about a foot of space between the levers and the ends of the car. The platform on which

the occupants of the car stood was four and one-half feet wide with twelve or sixteen inches on either side of the levers. Four men were on the front and four on the rear, besides two on the left-hand side and one on the right. Plaintiff testified he could not hold the handlebars without more room. The foregoing is according to the proof made by the plaintiff and we do not think such testimony should have been excluded from the consideration of the jury, because the defendant had theretofore loaded as many men on the car. Neither do we think plaintiff is debarred from recovering because he assumed the hazard, unless the danger was so great and obvious that men of ordinary caution would have refused to encounter it. The decisions of our Supreme Court have established that rule. Pauck v. Provision Co., 169 Mo. 467; Hurst v. Railway Co., 163 Mo. 309. We are bound to defer to the authority of those decisions, as no proof was made of a different law in Arkansas, and hold the issue on the question of plaintiff's assumption of the risk to which he was exposed in riding on the crowded car, was properly submitted.

As to the warning or signal which the plaintiff claimed Dyson was accustomed to give before the speed of the car was checked, when it was running fast, there was testimony he usually if not always exclaimed "hold the car," or similar words, from three to four rail-lengths before the stopping point was reached, and Dyson swore himself that on this occasion he cried out to Bodkin to hold the car when within one and a half or two rail-lengths; that is, he allowed about one-half the customary distance in which to stop, and, of course, necessitated a much quicker stop than usual.

An ingenious argument is made by appellant's counsel on this assignment of negligence, which they are disposed to treat as the only one meriting serious attention and as disproved by the whole evidence. After an attentive consideration of their presentation of the question, in connection with the record, we think they are at fault in contending the case

rests solely on the failure of Dyson to give the usual warning or "cautionary command" to stop, and also in fault in their argument that an analysis of the evidence shows the accident is to be ascribed solely to Bodkin's carlessness in stopping the car too suddenly.

The common-law rule of the non-liability of an employer for an injury to one of his servants by the negligence of a co-servant, prevails in Arkansas, and if no one but Bodkin was to blame for the accident, the railroad company can not be held responsible, because Bodkin was Haworth's fellow-servant. Dyson was not. He was the foreman of a large gang of men, had authority to employ and discharge help, and the men in the gang were under his control in the performance of their duty. His relation to the plaintiff is controlled by the following statute of the State of Arkansas:

"All persons engaged in the service of any railway corporation, foreign or domestic, doing business in this State, who are entrusted by such corporation with the authority of superintendence, control or command of other persons in the employ or service of such corporation, or with the authority to direct any other employee in the performance of any such duties, are vice-principals of such corporation, and are not fellow-servants with such employee." Statutes of Arkansas, 1894, sec. 6248.

The argument advanced by the counsel for appellant in regard to Dyson's giving or failure to give an order to stop, is as follows: if no command to stop the car was given by Dyson to Bodkin, as the plaintiff's testimony tends to prove, then Bodkin's action in stopping it was the sole cause of the injury and the company is not liable. If, on the other hand, Dyson commanded Bodkin to hold the car, as he, Bodkin and others swore, the usual warning was thereby given to the crew and the accident was caused solely by the careless obedience of Bodkin in slackening speed too suddenly and, hence, his negligence was the sole cause of the injury and the

defendant is not liable. But no such dilemma arises on the pleadings and the evidence. The petition in this case was carefully drawn and does not confine the negligence in respect to the "cautionary command" to a statement that it was not given at all; but says it was either omitted or given at the wrong time. Dyson's own testimony is that he gave it when the car was at a point about one-half the distance from the stopping point that it was wont to be when the order to stop was given, which, as said before, made it necessary for Bodkin to apply the brake more forcibly than he otherwise would have done in order to bring the car to a stop at the steel pile; that is, he had to reduce the speed of the car more rapidly than was customary. So Dyson's testimony supports one allegation of the petition on this point, while Haworth's supports the alternative averment that no notice to stop was given.

The argument is also advanced that it was unnecessary to give the command to stop the car, or any notice of the reduction of speed, as was usually done, because Dyson had notified the crew when they picked up the switch-points that a stop would be made at the steel pile to get rail-braces, which was sufficient notice. This argument will not hold water. After the car had passed the point at which a reduction of speed should have begun to stop at the steel pile, and the speed was neither reduced nor anything said about stopping, the crew may have been put off their guard by an impression that no stop would be made. It was for the jury to say whether it was incumbent on Dyson, as he was in charge of the car, to sound some note of warning to the crew at the usual place if he wanted the car checked, and this assignment of negligence in all its phases was for the jury to decide on the whole evidence.

Neither can we adopt the suggestion that Dyson was a fellow-servant with Haworth, when the accident occurred, though a foreman at other times, because they were then engaged in a common duty. No Arkansas case holding such

a doctrine has been cited and it is unacceptable to us on principle and opposed to the rule in this State. A superior or vice-principal in charge of workmen does not become a co-workman whenever he actively assists in the manual performance of a task, instead of superintending it. If he chooses to take on himself the role of laborer he may do so, but he does not thereby divest himself of his responsibility as foreman or superintendent and his duty to see that work is done in a careful way. The judgment and care which he must use as superintendent to see that precautions are taken to avoid harm to his gang, continue to be exacted of him by the law, although he may have stepped down from his pedestal for an interval. Russ v. Railroad Co., 112 Mo. 45; Dayharsh v. Railroad Co., 103 Mo. 570; Steube v. Iron Co., 85 Mo. App. (St. L.) 646. Dyson was Haworth's superior, and the superior of all the men in his crew. He was selected by the defendant company to direct the operation and movement of the car as well as to control the other work of the hands under him; he was in fact directing them, and the company is liable for his negligent act or omission while so doing. St. Louis, Iron Mountain & Southern R'y Co. v. Rickman, 65 Ark. 138; Haben v. Railroad Co., 20 Iowa loc. cit. 568; Schroeder v. Railroad Co., 108 Mo. 588; Moore v. Wabash R'y Co., 85 Mo. 588; Illinois Central R'y Co. v. Josey's Admrx., 61 S. W. (Ky.) 703.

No error was committed in receiving plaintiff's estimate of the speed of the car. He had been working in the employment he was then in for more than four months and was sufficiently expert to give testimony on that point; as much so as the other witnesses who testified about it. Walsh v. Railroad, 102 Mo. 586.

Cope's testimony as to the custom in handling handcars, when he worked for the company two years previous to the accident, had better be omitted on a retrial of the case as relating to too remote a date.

The plaintiff went to Neosho after he was injured and was driven to the office of Dr. H. H. Johnson, who is the company's local physician. Johnson examined and dressed Haworth's wound and drove him to the depot in his own buggy, when he went to the company's hospital at Pittsburg, Kansas. The defendant offered Dr. Johnson as a witness and he testified at some length in answer to hypothetical questions concerning injuries similar to plaintiff's and was then asked what was the result of his examination of the plaintiff himself. The court refused to permit him to answer the question on the objection that it called for privileged communications. Thereupon defendant's counsel made the following offer of proof:

"I offer to show by this witness that he made a physical examination of the plaintiff, Walter Haworth, on the fourteenth day of May, 1901, just after receiving the injury for which this suit is brought, and he made such an examination, not as the physician of Walter Haworth, but as the physician of the defendant company, and that Haworth at the time knew he was such a physician, and I offer to show from that examination that nothing was discovered save and except a scalp wound."

Said witness was permitted to testify that plaintiff walked away from his office and he saw him going down the street on the east side of the square and did not notice anything wrong about his walking; that he afterwards saw him in court and asked him how he was treated at the hospital and plaintiff said all right. The court rightly refused to permit this physician, who attended the plaintiff professionally, to testify what he learned while treating him, since it was objected to as privileged. R. S. 1899, sec. 4659; Gartside v. Ins. Co., 76 Mo. 446; Streeter v. City of Breckenridge, 23 Mo. App. (K. C.) 244; Corbet v. Railroad Co., 26 Mo. App. (St. L.)

621; Friel v. Railroad Co., 97 Cal. 40; Raymond v. Railroad Co., 65 Ia. 152.

This case was carefully and fully instructed and no particular exception is urged save to the refusal to instruct absolutely in defendant's favor, the direction as to the measure of damages and the refusal of three instructions which the defendant requested to the effect that no negligence could be found on account of the speed of the car, the number of men on it, or Bodkin's stopping the car too quickly, if Dyson ordered it stopped at the steel pile. We have already considered the propositions embodied in those three charges. In our view of the case, they were properly refused, especially as the one last noticed was fairly covered by others given for the defendant. The jury were told in several instructions that if they found the injury was caused solely by the negligence of Bodkin, their verdict should be for the defendant; and undoubtedly the law is that if Dyson's negligence was a partial cause the company is liable.

The following instruction was given on the measure of damages:

"If you find a verdict in favor of plaintiff you will assess his damages at such sum as will reasonably compensate him for whatever injury you believe from the evidence he sustained from defendant's negligence, if you believe it to have been negligent, and in estimating such damages you will take into consideration:

"First. The nature, character and extent of such injuries, if any;

"Second. The pain of body and mind, if any, which he has suffered from said injury;

"Third. The pain of body and mind, if any, which plaintiff is reasonably certain to suffer in the future therefrom;

"Fourth. The amount and value of time, if any, lost

by plaintiff in consequence of said injuries, but not to exceed $300 therefor;

"Fifth. The impairment, if any, in his earning capacity caused by such injuries.

"Your finding in the aggregate will not be over $14,900."

The foregoing charge sanctioned a finding by the jury of substantial damages in favor of plaintiff on account of the amount and value of his lost time for an amount not to exceed three hundred dollars. No testimony whatever was introduced as to the value of plaintiff's time, although he was a laborer working for stipulated wages and the proof could have been made by a bare question.

We had occasion recently to go over the subject of recovery for lost time in personal injury cases and ruled that where the nature of the employment was such that proof can be made, it must be; but where from the character of the employment it is impossible to prove definitely the value of a plaintiff's time, facts and circumstances which will aid in estimating its value may be shown and will be sufficient to warrant an instruction to the jury to take into consideration the plaintiff's loss of time in estimating his damages. Mabrey v. C. G. & J. Gravel Road Co., 92 Mo. App. (St. L.) 596. In that case, however, we explicitly said that no looseness of practice in making proof of the value of lost time was to be indulged and whenever it was susceptible of positive proof, that kind would be required. There can be no excuse for not introducing evidence to establish what the plaintiff's time was worth and the omission of that proof likely escaped the attention of the able judge before whom the case was tried.

Nor was the foregoing instruction right in its general scope; for it was a direction to the jury to allow substantial damages for that one item up to three hundred dollars, and if the defendant had endeavored to limit it by an instruction to the jury to return only nominal damages for plaintiff's

loss of time, the two instructions would have been squarely in conflict. While the actual ground of the decision in the Mabrey case was the impossibility of proving the exact value of Mabrey's time, as he was cropping on shares, the instruction in this case does not fall within the practice mentioned in that opinion but not adopted as the rule of decision, that if the charge on the measure of damages given in behalf of a plaintiff is right in its general scope and in the elements of damage referred to the consideration of the jury, the defendant must ask a limiting instruction as to any item for which he deems the plaintiff has only made out a case for nominal damages, if he would assign error on account of his recovering substantial damages on such item.

The rule announced in Murray v. Railroad Co., 101 Mo. 236, that the value of the services of a common nurse could be recovered without particular proof, because their value is generally known, has been since overruled (Cobb v. Railroad Co., 149 Mo. 609) and we do not think the wages of men working in railroad construction are so uniform or generally known that evidence of what they are is unnecessary; they probably vary in different localities and should be proven like other earnings. Slaughter v. Railroad Co., 116 Mo. 269; Mammerberg v. Railroad Co., 62 Mo. App. (K. C.) 563; O'Brien v. Loomis, 43 Mo. App. (St. L.) 29.

On account of the error in the instruction on the measure of damages, the judgment would have to be reversed and the cause remanded for another trial, but for the fact that the respondent has offered to remit the sum of three hundred dollars from the judgment recovered below by a suggestion to that effect made since our opinion was handed down, and as that sum was the full amount which the jury could have allowed on account of loss of time, said offer to remit is accepted and the judgment affirmed for eight hundred dollars, the costs of the appeal to be taxed against the respondent. *Bland, P. J.,* and *Barclay, J.,* concur.