LUCY PORTER, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, June 4, 1912.

1. **FRAUD AND DECEIT: Avoiding Written Instrument: Excuse for Failure to Read: Releases.** The rule that false representations as to the contents of a written instrument will not avoid it in the event the other party had an opportunity to read it, but negligently failed to do so, has no application where the deceived party was incapable, through pain and suffering, distraction, or other circumstances, of realizing the antagonistic position of the adverse party, or of judging of the necessary precautions to be taken against being defrauded; and in establishing such condition, it is not necessary to prove such technical incapacity as would avoid the contract regardless of the fraud.

2. ————: **Defrauding Person of Weak Intellect: Character of Proof Required.** Words and actions may be held to constitute fraud as to persons of weak intellect, or whose minds are enfeebled by disease, when they would not be regarded as such in favor of one in the full exercise of his faculties.

3. **APPELLATE PRACTICE: Demurrer to Evidence: Review: Conclusiveness of Plaintiff's Evidence.** Where the defendant offers no evidence, and, on appeal from a judgment rendered on a verdict for plaintiff, contends that the trial court erred in refusing to direct a verdict for him, the appellate court, in passing upon such assignment, must consider the evidence of plaintiff as absolutely true.

4. **RELEASES: Validity: Fraud: Excuse for Failure to Read Release: Sufficiency of Evidence.** In an action for personal injuries, where the validity of a release executed by plaintiff in consideration of the sum of five dollars was in issue, plaintiff, an old negro woman, inexperienced in business affairs, testified that she was thrown from a street car, and thereby sustained such a violent concussion as to be rendered unconscious, and also received bruises and injuries, which afterwards turned out to be very serious; that, within two days thereafter, while she was alone, defendant's claim agent called on her, and, after some conversation about her claim, said he was going to give her five dollars to get some medicine or whatever else she might need, and asked her to sign a paper; that nothing was said about a settlement or release, and she signed the release, without reading it or knowing what it was; and that, though not "out of her head" or insane, she was suffering, mentally and physically, and did not understand what she was doing. *Held*, that the evidence was sufficient to warrant the submission to the jury of the question whether plaintiff was in such a mental condition that the law will protect her against the fraud complained of, notwithstanding she failed to read the release or ask to have it read to her. *Held, further*, that the conversation between plaintiff and the claim agent was such as to inevitably lead her to conclude that the release was merely a receipt for five dollars to meet temporary needs, and that the acts of the claim agent constituted a fraud, which the law will relieve against by declaring the release void.

5. ———: ———: ———: ———: ———. In such a case, plaintiff's testimony as to her pain and suffering and consequent mental state is not to be considered as conclusively overcome by the fact that she was able to relate details as to what was said and done while the claim agent was present, since she might have had sufficient intellect to notice and understand these things, without being in a condition to judge of the precautions to be taken to protect herself against fraud.

6. **TRIAL PRACTICE: Question of Fact: When Referable to Jury.** Where the conclusion to be drawn from facts is such that reasonable minds might honestly differ concerning it, it should be referred to the jury.

7. **DAMAGES: Personal Injuries: Loss of Time; Sufficiency of Evidence.** In an action for personal injuries, evidence that, prior to her injury, plaintiff was earning at least eight dollars per week, but that, since her injury and up to the time of the trial, which occurred more than four years thereafter, she had not been able to earn more than two dollars per week, was sufficient to warrant an instruction permitting a finding for substantial damages for loss of earnings, not exceeding $450,

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer,* Judge.

AFFIRMED.

*Boyle & Priest, R. E. Blodgett* and *Paul U. Farley* for appellant.

(1) The court erred in overruling a peremptory instruction in the nature of a demurrer to the evidence offered by defendant at the close of plaintiff's case, because plaintiff admitted signing the release pleaded in defendant's answer, admitted that she could read and had an opportunity to read it and failed to introduce evidence sufficient to raise the issue of plaintiff's want of mental capacity to understand the nature and effect of her acts when she executed the release. Bennett v. Lumber Co., 116 Mo. App. 699; Zalotuchin v. Railroad, 127 Mo. App. 577; Railroad v. Polka, 124 S. W. 226; Osborne v. Railroad, 71 Neb. 180; Railroad v. Bryant, 9 Ohio Cir. Ct. 332; Railroad v. Heck, 147 Fed. 777; Wallace v. Railroad, 67 Iowa, 547; Shaffer v. Calvin, 88 Md. 394; Wallace v. Skinner, 15 Wyo. 233. (2 ) Plaintiff's instruction No. 3 is erroneous in that it permits recovery for loss of earnings of plaintiff's labor, when there was no evidence introduced which fixed the amount of such alleged loss. Howorth v. Railroad, 94 Mo. App. 215.

*Marion C. Early* for respondent.

(1) The question whether a release of all claims for damages was fairly obtained by the party liable, and whether the party executing it knew and understood its contents, and knew she was releasing her right of action for damages, were for the jury. Its finding of fact is not open to review. Mullen v. Railroad, 127 Mass. 86; Railroad, 201 Ill. 152, 94 Am. St. Rep. 158; Bertrand v. Transit Co., 108 Mo. App. 70;

Robertson v. Construction Co., 115 Mo. App. 456. (2)
The pretended consideration named in the alleged re-
lease was merely nominal and a mere pretext. Not
being a valuable consideration under the facts in this
case it is unsufficient.   Wallace v. Figone, 107 Mo.
App. · 362; Shaw v. Weber, 79 Hun, 307; Christian
v. Railroad, 67 Minn. 94; Scheers v. Powers-Simp-
son Co., 85 Minn. 447; Russell v. Coal Co., 109 Tenn.
43.

STATEMENT.—Suit to recover damages for per-
sonal injuries suffered by plaintiff through the neg-
ligence of defendant's agents and servants in prema-
turely starting a car while she was in the act of alight-
ing from it.   Plaintiff had verdict and judgment for
one thousand dollars and defendant has appealed.

There is no question on this appeal but that the
plaintiff was injured through the negligence of defend-
ant's servants as alleged.   But two questions are
presented:   (1)   whether, under the evidence, the re-
lease which plaintiff admits she signed must be taken
and treated as a bar conclusive against her right to
recover;   (2)   whether the evidence could support a
recovery for loss of earnings.   We will confine our
statement to matters bearing on these questions.   The
case is here on plaintiff's evidence alone, the defend-
ant having offered none.

Plaintiff is a negro woman, able to read and write,
but inexperienced in business affairs, and at the time
of her injury was about sixty years of age.   The cir-
cumstances disclosed by her testimony may be stated
as follows:   About eight o'clock in the evening of
June 23, 1906, she was in the act of alighting from
defendant's car when it suddenly stopped and threw
her violently to the street pavement, rendering her
unconscious.   When she came to her senses, she was
on her feet, sick and upset, and not knowing where she
was.   She thinks, though vaguely, that the conductor

asked her name and address and whether she was hurt.
She stood for awhile to regain her faculties and then
"hobbled" to her home two blocks away. · Her face
and hands were scratched, her glasses broken and her
dress torn, her leg was bruised, her ankle sprained
and knee swollen. On the next day, at plaintiff's re-
quest, her daughter wrote a letter to the defendant.
The contents of this letter are not disclosed, but on
cross-examination plaintiff stated that she caused it
to be written for the purpose of having one of defend-
ant's representatives call on her to ascertain her con-
dition; also to pay her any money that she and they
might agree on, if they agreed on any; that she knew
she had a claim for the wrong done her and wanted
to settle it. On June 25th, the day after the letter was
written, and the second day after her fall, she was
home, alone, sitting up, dressed, when a man knocked.
She hobbled to the door, opened it, and in answer to
his inquiry told him she was Lucy Porter, and asked
him to come in so that she could sit down, as her leg
was hurting very much. He came in and at her invita-
tion took a seat. She sat in a rocking chair by the
center table, but does not remember what chair he sat
in. He asked her if she had been crippled and she
said, "Yes, on a railroad." He asked her if she had
sent the letter, showing it to her, and she told him her
daughter had done so at her request. She showed him
her bruised ankle and he told her that he was not a
doctor, but would send her one. She testifies that she
was suffering so and was in such a condition that she
does not really know what he said concerning her in-
jury; she does not remember telling about her glasses
being broken or her clothes being spoiled. "He stayed
such a short time." He asked her what she thought
the company ought to do for her and she said that she
did not know then, that she did not know how badly
she was injured or what might be the result. He then
did some writing and asked if there was anyone else

in the house, saying that he would have to have some one witness "this;" that he was going to give her five dollars for a little medicine and such things as she might need. She told him no one else was there, that her daughter was at school. He then inquired as to there being a neighbor whom she knew and she suggested the Street family, two doors away; said that he might get their daughter to come in. He volunteered to go and see, and did so, returning shortly with the neighbor's daughter, to whom he said, "I am going to give Mrs. Porter five dollars to get her some medicine or whatever she may need. I want you to just sign this." Nothing was said about a settlement or release for injuries and plaintiff came to no agreement with him. He said he wanted her to sign "this." The paper was on the table before her and she simply reached over and signed it, just like she "would sign any receipt." She sat up to the table when she signed the paper, but does not remember how or with what she signed her name or that she got up to get pen and ink. She did not read it or know what she was signing, and did not ask him and he did not tell her what it was. She knew nothing more than that she was signing for the five dollars which he had said he would give her for medicine, and she did not think there were any questions to ask. In her condition she did not think of reading it. Though not out of her head or insane, she was sick and suffering terribly with her limb, in a "rack" of pain, her head was hurting her, she was suffering mentally and physically and did not understand what she was doing. When the claim agent went, he left a check for five dollars. A few days later she signed her name on the back of the check and her daughter went to the defendant's place and cashed it. The claim agent left no copy of what she signed, and she did not know she had signed a release until after she had filed a suit, when defendant set up the release in its answer. She dismissed the

suit, tendered back the amount received, the tender was rejected, and she brougtht this second suit.

It appears from the evidence that, prior to her injuries, the plaintiff was a well-preserved woman, in splendid health, usually employed in private homes as a waitress or as a seamstress, and always able to perform her duties well. For some five weeks before her fall she was confined to her home, entirely unable to work. Her leg appears to have been permanently injured, and often, when she is walking, it gives way under her without warning and causes her to fall. As one of the witnesses who had known her for many years stated, she has become "a sort of a wreck." For at least three years prior to her injury her average weekly earnings had been at least as much as eight dollars a week but since her injuries she has not been able to follow her usual occupation as a waitress and has been unable to earn more than two dollars per week. This suit was filed nearly three years, and the trial occurred more than four years, after the date she received her injuries.

CAULFIELD, J. (after stating the facts).—I. Defendant first contends that "the court erred in over-ruling a peremptory instruction in the nature of a demurrer to the evidence offered by defendant at the close of plaintiff's case, because plaintiff admitted signing the release pleaded in defendant's answer, admitted that she could read and had an opportunity to read it and failed to introduce evidence sufficient to raise the issue of plaintiff's want of mental capacity to understand the nature and effect of her acts when she executed the release." We do not agree to this contention. True, the rule is stated to be that false representations as to the contents of a written instrument will not avoid the instrument (Johnston v. Cov. Mut. Life Ins. Co., 93 Mo. App. 580; Magee v. Verity,

97 Mo. App. 486, 71 S. W. 472; United Breeders Co. v. Wright, 134 Mo. App. 717, 115 S. W. 470); but this is on the ground that the deceived party is negligent in failing to read the instrument or to have it read to him, having opportunity to do so. [Johnston v. Cov. Mut. Life Ins. Co., supra; Tait v. Locke, 130 Mo. App. 273, 109 S. W. 105; Breeders Co. v. Wright, supra; 1 Page on Contracts, sec. 70.] "The common law affords to every one reasonable protection against fraud in dealing; but it does not go the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." [2 Kent's Com., 485.] A man will not be relieved for "voluntarily neglecting to use common sense and judgment if he has them." [Robinson v. Glass, 94 Ind. 211.] The rule, anomalous anyway (see Tait v. Locke, supra), is not to be applied where the deceived party for any reason was incapable of judging of the precautions to be taken against being defrauded and overreached. "It is the pride of the law that while refusing to encourage 'supine negligence' or to lend ear to a complaint against that which was perfectly patent and manifest, it will yet aid the unfortunate whose ignorance and situation have been made the means of an unfair and unjust contract." . . . "When the complaint comes from the weak, the helpless, the unfortunate and ignorant, . . . the entire aspect is changed and the law affords them protection, for the very reason that they are not able to protect themselves and cannot be considered at fault in becoming the victim of the wrongdoer." [Hendricks v. Vivion, 118 Mo. App. 417, 94 S. W. 318.] Nor is it necessary to prove such technical incapacity as would avoid the contract regardless of the fraud. [1 Story on Contracts, sec. 627; Freeland v. Eldridge, 19 Mo. 325.] It is sufficient, we take it, to show that through pain and suffering, distraction, or other circumstances,

the mind of the person misled was not in a condition to realize the antagonistic position of the adversary or to judge of the precautions to be taken against being defrauded and overreached. We may also add that words and actions may be held to constitute fraud as to a person of weak intellect, or whose mind is enfeebled by disease, when they would not be regarded as such in favor of one in the full exercise of his faculties. [1 Story on Contracts, sec. 627.]

Now it appears from plaintiff's testimony, which is entirely uncontradicted and in view of the verdict must be accepted as absolutely true, that on the day when the instrument was made, plaintiff was an old negro woman, inexperienced in business affairs, and alone in the house when the claim agent called. Hardly two days before she had suffered such a violent shock from concussion as to be rendered unconscious and had suffered bruises and injuries which afterwards turned out to be very serious. The conversation between her and the agent was such as to inevitably lead her to conclude that the paper he asked her to sign must be a mere receipt for five dollars to meet small temporary needs of medicine, etc., and not a release of her entire cause of action. She testified that in her condition she did not think of reading the paper; though not out of her head or insane, she was sick and suffering terribly with her limb, in a "rack" of pain, her head was hurting her, she was suffering mentally and physically and did not understand what she was doing. We are of the opinion that this was sufficient evidence to take to the jury the question of whether the plaintiff was in such a mental condition that the law will protect her against the fraud complained of, notwithstanding she failed to read the instrument or asked to have it read to her.

We are also of the opinion that the acts of the claim agent, under the circumstances here disclosed, constitute a fraud, such as the law will relieve against

by declaring void the instrument procured to be signed by means of it. We do not believe that plaintiff's testimony as to her pain and suffering and consequent mental state is to be considered as conclusively overcome by the fact that she was able to relate details as to what was said and done while the agent was present. She might have had sufficient intellect to notice and understand these things without being in a condition to judge of the precautions to be taken to protect herself against fraud and imposition. In any event we consider this matter to be one concerning which two reasonable minds might honestly differ, and that it was properly referred to the jury, whose conclusion is binding on us.

II. It was not error for the trial court by instruction to permit a finding of substantial damages for loss of earnings of plaintiff's labor not exceeding four hundred and fifty dollars. There was sufficient evidence of the value of plaintiff's time under the ruling in Haworth v. Kansas City Southern Ry Co., 94 Mo. App. 215, 68 S. W. 111, the case upon which defendant relies.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.